JOSEPH BOUCHER *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Worcester.   October 1, 1907. — October 15, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, & SHELDON, JJ.

*Railroad.   Negligence.   Agency.   Master and Servant.*

In an action against a railroad company for personal injuries, where it appeared that the plaintiff drove upon a dangerous grade crossing when, although a train was approaching, the first gates had been left up to allow a street car to pass out and the second gates were closed but the gate tender raised them to allow the plaintiff to pass and then shut one of them down between the plaintiff and his horse, and the plaintiff was struck by the train, it was assumed by the parties that there was evidence of due care on the part of the plaintiff and of negligence on the part of the gate tender, and the assumption was found by this court to be warranted by the evidence.

In an action against a railroad company for personal injuries incurred at a grade crossing of a crowded city street by the defendant's railroad, parallel to which ran the tracks of another railroad company as a part of the same grade

crossing, where the evidence shows that gates had been maintained and operated at the crossing for a long time and that this was done under some arrangement made by the defendant with the other railroad company, the fact that the gate tender, whose negligence could have been found to have caused the accident, was hired and paid by the other railroad company does not prevent a finding that the business of operating the gates never was taken out of the control of the defendant and that, in relation to third persons, the gate tender was the defendant's servant or agent.

The frequent running of railroad trains over a grade crossing of a crowded street in a large city is a business fraught with such danger to travellers on the street as to impose upon the corporation operating the trains a duty to take precautions for the safety of such travellers, which it cannot escape by entrusting its performance to an independent contractor.

KNOWLTON, C. J.    The plaintiff was injured at a grade crossing of the defendant's railroad in Worcester.   The undisputed evidence tended to show that he was driving down Front Street, across the tracks of the defendant and of the Boston and Albany Railroad, directly in front of the union station ; that the street crosses nine tracks at that point, the first five of which go under the arch of the station ; that the first three of these are used by the New York Central and Hudson River Railroad Company under a lease from the Boston and Albany Railroad Company, and the fourth and fifth for the passenger service of the defendant's railroad ; that the sixth, seventh and eighth are used for freight service, the sixth and eighth principally by the New York Central and Hudson River Railroad Company and the seventh by the defendant, and that the ninth was a spur track to the Bradley Car Works.   There was evidence that five lines of electric cars run through the street and over these railroad tracks at this crossing, and that many teams pass there.   Two gates were maintained on each side of the tracks, which were raised and lowered by a gate tender, whose gate house was near the centre of the crossing at the east side of the street, between the fourth and fifth tracks.   The plaintiff was driving southward, the gates were up on the north side of the crossing and he drove upon the tracks, but, before he got across them, the gates on the southerly side were seen to be down, and he stopped his horse.   The evidence tended to show that, as he was driving upon the crossing, one of the defendant's trains was about to pass over it on the fifth track, and the gate tender started to put down the gates to exclude persons from the crossing.   The

gates on the northerly side were left up long enough to allow an electric car upon the crossing to pass off to the northward, and during that time the · plaintiff and his companion drove on. Afterwards the gate tender raised the gates on the southerly side to let the plaintiff off, but lowered them again quickly, so that one of them came down between the horse and the plaintiff as he was sitting in the wagon, driving southward.   The judge ruled, at the defendant's request, that the defendant was not liable for these acts of the gateman, and ordered a verdict for the defendant.

In the argument before us both parties have assumed, and we think rightly, that there was evidence for the jury on the questions whether the plaintiff was in the exercise of due care, and whether there was negligence on the part of the gateman.   We must, therefore, consider the evidence bearing upon the relations of the gateman to the defendant.

We understand that the locations of the Boston and Albany Railroad and of the defendant's railroad are adjacent to each other at the crossing.   The jury hardly could fail to find that this was a dangerous crossing, calling for great precaution for the safety of travellers on the street.   Gates were maintained, to be raised and lowered by a gateman, to exclude travellers from the defendant's tracks while trains were passing.   There was no evidence to show whether the defendant had been ordered to maintain gates and an agent to open and close them, under the R. L. c. 111, § 192.   If it had, it would be bound to obey the order, and would be liable for the negligence of its agent · in the management of the gates.   If there had been· no such order, the jury well might find that it was the duty of the defendant to maintain such gates and a gateman for the protection of travellers on the street, and that it would be liable for accidents caused by its failure to do this.   *Eaton* v. `Fitchburg Railroad*, 129 Mass. 364.   The evidence tends strongly to show that, with or without an order under the statute, there were compelling motives of duty and of pecuniary self-interest to induce the defendant to make provision for the operation of gates by the side of its tracks at this crossing.   These gates were being operated at the time of the accident, and had been maintained and used for a long time.   Without further evidence,

the jury well might find that this business, being done on the defendant's premises, apparently in its interest, was the defendant's business. The evidence went further, and tended to show that it was being done under some arrangement made by the defendant with the New York Central and Hudson River Railroad Company, the nature of which was not disclosed. This strengthened the reasons for finding that the defendant owned and controlled the business, and that it was done in its interest, through the agency of the gate tender. Unless it appeared that the business had passed out of its control, so as to become, as to proprietorship and right of control, the business of another, the gate tender in doing it was, in reference to liability to third persons, its servant and agent. It appeared that he was hired and paid by the New York Central and Hudson River Railroad Company. But this circumstance is not inconsistent with an arrangement whereby he was furnished to the defendant to do its business in the protection of its tracks, as its representative, for whose negligence it would be liable. The lending of one's servant to another party to act in his business, subject to his control, is common. The law in relation to it is discussed in *Delory* v. *Blodgett*, 185 Mass. 126, and in cases there cited. It also was considered in the opinions in *Dutton* v. *Amesbury National Bank*, 181 Mass. 154. In the first mentioned of these cases the determining facts are stated as follows : " The question in every case is whether the proprietor for whom the work is being done has given up his proprietorship of the particular business to an independent contractor, and has thus divested himself of the right of control, so that he has no longer a legal right to terminate the work or direct it. If he has done nothing to limit his rights in regard to the business which is being done for his benefit, but retains his proprietorship of it, each man who works in it is legally subject to his control while so engaged, and, in reference to the rights of third persons who are affected by the work, is his servant." We are of opinion that there was evidence from which the jury might have found that this business was never taken out of the proprietorship or right of control of the defendant, and that, in relation to third persons, the gate tender was its servant or agent.

The testimony is entirely consistent with the existence of such

an arrangement as appeared in *Brow* v. *Boston & Albany Railroad*, 157 Mass. 399, in which it was shown that the Boston and Albany Railroad Company employed a gateman and paid him, and received a repayment of a part of his wages from the two other railroad corporations whose tracks were a part of the same crossing. Although the question was not before the court, it was intimated in the opinion that the jury might find that the three railroad companies jointly " employed a common agent, for whose torts, in the performance of his duty, each and all were responsible."

It was not necessary that the plaintiff should satisfy the jury under what arrangement the business of guarding the defendant's crossing was being done. It was enough if evidence was introduced from which an inference could be drawn that the business was the defendant's, and that the person doing it was its agent and representative.

The view most favorable to the defendant would be that, by the arrangement with the New York Central Company, that company became an independent contractor with the defendant, and undertook to do the business of protecting the defendant's railroad with gates, in such a way as to leave it with no right to control, direct or manage it. If that were the arrangement, the gate tender would not be the defendant's servant. But it does not follow that the defendant would not be liable for his failure to use due care for the protection of travellers at the crossing. If the gates were maintained in obedience to an order made under the R. L. c. 111, § 192, we think it plain that the corporation could not relieve itself from liability for negligence in the maintenance and management of them by an arrangement with an independent contractor. By the terms of the statute they are to be maintained by the corporation's agent, and the corporation is to be responsible for their proper maintenance. Even if there was no such order, and if the jury found that it was the defendant's duty to maintain them for the protection of the public, we are of opinion that it was a duty that could not be delegated, either to a contractor or to a servant, in such a way as to relieve the corporation from the obligation to see that due care was exercised for the safety of travellers. It is a principle of law that, when one is conducting a business the necessary

effect of which is to expose others to great danger, so that he ought to take precautions for their safety, he is responsible for the negligence of an independent contractor to whom he entrusts the performance of this duty. *Woodman* v. *Metropolitan Railroad,* 149 Mass. 335. *Curtis* v. *Kiley,* 153 Mass. 123. *Blessington* v. *Boston,* 153 Mass. 409. *Pye* v. *Faxon,* 156 Mass. 471. We are of opinion that the frequent running of railroad trains over a grade crossing on a crowded street in a great city is a business fraught with such danger to travellers as to impose upon the railroad corporation that runs them a duty to take precautions for the safety of the travellers, which comes within the principle just stated. This too is intimated, although not expressly decided in *Brow* v. *Boston & Albany Railroad, ubi supra.*

*Exceptions sustained.*

*M. M. Taylor,* for the plaintiff.
*A. J. Young,* for the defendant.