DANIEL A. BARRY *vs.* EDWARD KEELER
(and nine companion cases [1]).

Suffolk.    April 7, 1947. — December 4, 1947.

Present: QUA, C.J., DOLAN, WILKINS, & SPALDING, JJ.

*Soldiers' and Sailors' Civil Relief Act. Motor Vehicle,* Operation, Interstate commerce, Lease of motor vehicle. *Interstate Commerce. Carrier,* Motor truck. *Law of the Case. Negligence,* Independent contractor. *Indemnity. Damages,* For tort. *Evidence,* Judicial notice. *Practice, Civil,* Judicial discretion, Continuance, Trial of actions together, New trial, Judgment ordered by Supreme Judicial Court.

Determination of the question, whether or not, under the Federal soldiers' and sailors' civil relief act of 1940, a stay should be granted to a defendant in an action who is in military service, is to be made by the trial judge in the exercise of sound judicial discretion.

Denial of a motion by a defendant in military service, founded on the Federal soldiers' and sailors' civil relief act of 1940, to stay prosecution of actions against him for causing a death and conscious suffering, personal injury and property damage arising from his alleged negligence in operation of a motor tractor-trailer resulting in a collision with an automobile, did not disclose an abuse of judicial discretion by the trial judge where the parties agreed that a statement, attached to the motion, of what the defendant would testify if present might be read to the jury at a trial of the actions; it appeared that the statement strongly tended to show negligence of the defendant in driving on a slippery road leading to an intersection at a speed which made it impossible to stop in time to avoid the collision, in not seeing the automobile until he was close upon it, and in going through a red traffic light, and did not show contributory negligence on the part of anyone; and the trial judge found that the defendant "would not be prejudiced in having the cases tried on the statement in his absence."

A defendant not in military service, in an action arising from a collision caused by negligence of the operator of a motor vehicle, had no standing under the Federal soldiers' and sailors' civil relief act of 1940 to seek a stay of the action where the negligent operator was in military service, it was alleged that the defendant was responsible

---

[1] The companion cases are Daniel A. Barry *vs.* Patrick R. Hamilton, Philip F. McDonald *vs.* Edward Keeler, Philip F. McDonald *vs.* Patrick R. Hamilton, Julia Gruberski, administratrix, *vs.* Edward Keeler, Julia Gruberski, administratrix, *vs.* Patrick R. Hamilton, Gabriel A. Grison *vs.* Edward Keeler, Gabriel A. Grison *vs.* Patrick R. Hamilton, Daniel A. Barry *vs.* Shawmut Transportation Co. Inc., and Julia Gruberski, administratrix, *vs.* Shawmut Transportation Co. Inc.

for his conduct, and there was to be tried with such action an action against the negligent operator; whether the defendant was entitled to a continuance on such grounds was a matter to be determined by the trial judge in the exercise of sound judicial discretion.

At the trial together of actions by a person injured through negligence of the operator of a motor tractor-trailer unit, one against the owner of the trailer and the other against the owner of the tractor, which was leased to the owner of the trailer, where there was evidence warranting a finding against the owner of the trailer on the ground that in the circumstances his duty to the public arising from his use as a unit of the tractor and trailer as a common carrier under a governmental license was nondelegable, and also a finding against the owner of the tractor on the ground that he was the employer of the operator, there was no error in refusing a request of the owner of the tractor for an instruction to the jury in substance that, if they found such use of the tractor-trailer unit by the owner of the trailer, they should find him liable for the consequences of negligence of the operator and should find the owner of the tractor not liable; nor was there error prejudicial to the owner of the tractor in a failure of the judge to instruct the jury as to such possible liability of the owner of the trailer.

No error prejudicial to the defendant appeared in an instruction to the jury, at the trial of an action against the owner of a motor tractor for injuries caused by negligence of its operator in interstate commerce, that they could disregard references in the evidence to the regulations of the interstate commerce commission since there was no evidence as to what the regulations were, where no such regulations were brought to the attention of the trial court or of this court and nothing contained in the defendant's brief disclosed what bearing, if any, such regulations would have on the rights of the parties.

The defendants in actions against the owner and the operator of a motor tractor, which was a part of a tractor-trailer unit, for injuries sustained in a collision caused by negligence of the operator, which were tried with actions against the owner of the trailer, were not harmed by the granting of motions setting aside verdicts for the defendant in the actions against the owner of the trailer and granting the plaintiffs in those actions a new trial, where the evidence at the first trial had warranted findings that the liabilities of the respective defendants were not mutually exclusive and that all were liable.

A trial judge may grant a new trial of an action on the ground that a decisive ruling made by him at the original trial, although not excepted to, was erroneous.

One engaged in transportation of freight in interstate commerce in a motor tractor-trailer unit under franchises granted by the interstate commerce commission and by the department of public utilities might be found liable for injuries sustained in a collision caused by negligence of the operator of the unit although such operator was under the sole direction and control of the owner of the tractor and the tractor had been leased to the carrier by its owner as an independent contractor.

At the trial of an action against an interstate carrier of freight by a motor tractor-trailer unit, for conscious suffering and death sustained

in a collision caused by negligence of the operator of the unit, it was not error to exclude evidence of verdicts returned for the same causes in actions by the same plaintiff previously tried against the operator and his employer, who was the owner of the tractor and was an independent contractor with the carrier, nor to permit the jury to assess damages in excess of the amount of such verdicts, where it appeared that, due to the pendency of exceptions, judgments in such other actions had not been entered: the trial judge was required to deal with the situation as it existed at the time he made his rulings; but this court, having determined that the exceptions pending in such other actions must be overruled and that judgments must be entered on the verdicts returned therein, ordered under G. L. (Ter. Ed.) c. 231, § 124, that judgment be entered in the action against the carrier in the same amount (except for such differences as there might be in the matter of interest and costs) as the amount of the other judgments.

TEN ACTIONS OF TORT. Writs in all the actions were in the Municipal Court of the City of Boston dated in the year 1942, those in the three Barry actions being dated March 27 and April 28, those in the three Gruberski, administratrix, actions being dated April 9, 13, and 17, those in the two McDonald actions being dated April 16, and those in the two Grison actions being dated December 10.

Fifteen actions had been brought relating to the same collision between motor vehicles, three each by Daniel A. Barry, by Philip F. McDonald, by William Dunn, by Julia Gruberski, administratrix of the estate of Michael Gruberski, and by Gabriel A. Grison, each plaintiff bringing separate actions against Patrick R. Hamilton, Edward Keeler and Shawmut Transportation Co. Inc. Barry sought recovery for personal injuries and property damage; McDonald, Grison and Dunn for personal injuries; and Gruberski, administratrix, for conscious suffering and death of her intestate. All these actions were removed to the Superior Court.

These actions were heard together in the pre-trial session by *Brogna*, J. Exceptions of Hamilton and Keeler to rulings there made are dealt with on pages 119 to 121 of the opinion, and exceptions saved by Shawmut Transportation Co. Inc. to rulings there made are dealt with on page 125.

All the defendants conceded that there was "considerable

testimony" from which the jury could find negligence of the defendant Hamilton and due care of Gruberski, Barry, McDonald, Grison and Dunn.

Pursuant to orders made in the pre-trial session, the fifteen actions were tried together before *Broadhurst*, J. The defendants Hamilton and Keeler prosecuted exceptions saved at that trial. Those exceptions are dealt with on pages 121 to 124 of the opinion. In the Barry actions, verdicts were returned for the plaintiff against Hamilton and Keeler, respectively, in the aggregate amount of $1,915. In the Gruberski actions, verdicts were returned against Hamilton and Keeler, respectively, in the sum of $5,625 for causing the death of the plaintiff's intestate and the sum of $1,000 for his conscious suffering. In the McDonald actions, verdicts were returned against Hamilton and Keeler, respectively, in the sum of $1,350. In the Grison actions verdicts were returned against Hamilton and Keeler, respectively, in the sum of $800. There also were verdicts in favor of Dunn against Hamilton and Keeler, respectively. In all the actions against Shawmut Transportation Co. Inc., verdicts were returned for the defendant.

All the plaintiffs moved for a new trial in their actions against Shawmut Transportation Co. Inc. The motions of McDonald and Grison were denied, and no exceptions to their denial were presented on the record. The motions of Barry, Gruberski, administratrix, and Dunn were allowed, subject to exceptions by the corporation. These exceptions in the Barry and Gruberski actions are dealt with on pages 124, 125–126 of the opinion.

The defendants Hamilton and Keeler moved for a new trial of all the actions against them. Those motions were denied. Exceptions which they alleged to such denial were not pressed in this court.

The plaintiffs Barry, McDonald and Grison moved for a new trial in their actions against Hamilton and Keeler on the ground that damages awarded in the verdicts were inadequate. The motions of McDonald and Grison were denied. Those of Barry were allowed and he was granted a new trial of his actions against the defendants Hamilton

and Keeler on the question of damages only. Those defendants alleged exceptions which are dealt with in the opinion on page 124.

The actions of Barry against Hamilton and against Keeler on the question of damages only, and the actions of Barry, Gruberski, administratrix, and Dunn against Shawmut Transportation Co. Inc. then came on for trial together before *Collins,* J. The defendant Shawmut Transportation Co., Inc. alleged exceptions to being required to try the actions together and also to being required to try in the continued absence of Hamilton in military service. The defendants Hamilton and Keeler excepted to "being forced to trial on the question of damages only" while their exceptions saved at the first trial were pending, and also renewed their exceptions to having to try in Hamilton's absence in military service. Such exceptions of Shawmut Transportation Co. Inc. and its other exceptions saved at the second trial are dealt with in the opinion on pages 126–129.

At the second trial, the jury answered in the affirmative a question, "Did the Shawmut Transportation Co. Inc., on February 28, 1942, have control or the right to control the operation of the tractor-trailer unit by Hamilton," found for the plaintiff Barry against all the defendants in the aggregate sum of $5,415, and for the plaintiff Gruberski, administratrix, against the defendant Shawmut Transportation Co. Inc., in the sum of $10,250.62 for causing the death of the plaintiff's intestate and of $2,000 for his conscious suffering. There was also a verdict for the plaintiff Dunn. The defendant Shawmut Transportation Co. Inc. moved for a new trial stating as the fourth and fifth grounds of its motion that the damages assessed were excessive and that the motion was made "to prevent a miscarriage of justice." The motion was denied subject to its exception.

The Dunn actions were disposed of by the parties after the second trial.

The exceptions presented on the record, therefore, relate only to the defendants' exceptions in the three Barry actions, in the three Gruberski actions, in the two remaining

McDonald actions, and in the two remaining Grison actions. No exceptions by any of the plaintiffs are presented.

*R. B. Snow,* (*A. F. Bickford* with him,) for the defendants Keeler and another.

*H. S. Avery,* (*M. T. Prendergast* with him,) for the defendant Shawmut Transportation Co. Inc.

*H. C. Thompson,* (*J. Finks, A. Sigel,* & *P. F. McMahon* with him,) for the several plaintiffs.

SPALDING, J. These actions of tort arise out of a collision between an automobile driven by the plaintiff Barry and a so called tractor-trailer unit operated by the defendant Hamilton. The tractor of this unit was owned by the defendant Keeler and the trailer was owned by the defendant Shawmut Transportation Co. Inc. Actions were brought by Barry and three passengers (Dunn, Grison and McDonald) and by the plaintiff Gruberski as administratrix of the estate of her husband (also a passenger) against Hamilton, Keeler and the Shawmut Transportation Co. Inc., hereinafter called Shawmut. The jury returned verdicts for the plaintiffs in all the cases against the defendants Hamilton and Keeler and for the defendant in all the cases brought against Shawmut. Numerous motions for new trials were presented which were disposed of as indicated on pages 117–118, *supra.* The cases come here on exceptions of all of the defendants. The defendants concede that there was evidence which would have warranted the jury in finding negligence on the part of the defendant Hamilton in the operation of the tractor-trailer unit. They also concede that the evidence warranted a finding that all of the occupants of the automobile were in the exercise of due care.

### I. EXCEPTIONS OF THE DEFENDANTS HAMILTON AND KEELER.

1. When the cases came on for pre-trial hearing on April 21, 1944, counsel representing Hamilton and Keeler pressed a motion on behalf of these defendants that the trial of the cases be stayed because Hamilton was in military service and was outside of the country. It does not appear that the facts on which the motion was grounded were challenged.

This motion was supported by affidavit of counsel to which was attached a statement of what Hamilton would testify if present. All counsel agreed that this statement might be read to the jury when the cases were tried. Finding that the defendant Hamilton "would not be prejudiced in having the cases tried on the statement in his absence," the pre-trial judge, subject to the exceptions of Hamilton and Keeler, denied the motion and ordered the cases to stand for trial on June 5, 1944.

The soldiers' and sailors' civil relief act of 1940, Act of October 17, 1940, c. 888, § 201 (54 U. S. Sts. at Large, 1181) reads: "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, *and shall*, on application to it by such person or some person on his behalf, *be stayed* as provided in this Act, *unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service"* (emphasis supplied). Whether or not a stay should have been granted to Hamilton by reason of his military service was a question to be decided by the trial judge in the exercise of his discretion. *Boone* v. *Lightner*, 319 U. S. 561. But this discretion is not unlimited, and where a stay has been denied under circumstances showing an abuse of discretion the decision may be reversed on appeal. *In re Adoption of a Minor*, 136 Fed. (2d) 790 (C. A. D. C.). *Esposito* v. *Schille*, 131 Conn. 449. *Smith* v. *Sanders*, 293 Ky. 6, 7–8. *Burke* v. *Hyde Corp.* (Tex. Civ. App.) 173 S. W. (2d) 364. In construing the provision of the act under consideration it was said in *Boone* v. *Lightner*, 319 U. S. 561, 575, "The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the

service.  Absence when one's rights or liabilities are being adjudged is usually prima facie prejudicial."

Viewing the action of the pre-trial judge in the light of these principles, we think that there was no abuse of discretion.  The statement of Hamilton, which counsel had agreed might be read at the trial, strongly tended to show negligence on his part in driving on a slippery road leading to an intersection at a speed which made it impossible for him to stop in time to avoid the collision, in not seeing Barry until he was close upon him, and in going through a red light.  The statement failed to show any negligence on the part of the plaintiffs and contained little or nothing which bore on other issues in the case.  The judge might well have concluded that Hamilton's presence in court and the testimony that he presumably would give would not have aided his case materially.  In other words, the judge was warranted in concluding that Hamilton's ability to conduct his defence was "not materially affected by reason of his military service."  See *Gross* v. *Williams*, 149 Fed. (2d) 84 (C. C. A. 8).  *Johnson* v. *Johnson*, 59 Cal. App. (2d) 375. The subsequent course of the trial tends to confirm the conclusion of the judge.

The right of Keeler to a continuance must be considered without reference to the provision of the soldiers' and sailors' civil relief act discussed above, for that applies only in an "action or proceeding . . . in which a person in military service is involved, either as plaintiff or defendant."  See *Royster* v. *Lederle*, 128 Fed. (2d) 197, 199 (C. C. A. 6); *Johnson* v. *Johnson*, 59 Cal. App. (2d) 375, 382–383.  Keeler was not in the military service at the time of the trial. Whether he was entitled to a continuance was a matter for the judge to determine in the exercise of sound judicial discretion.  *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 16.  *Knapp* v. *Graham*, 320 Mass. 50, 55.  We cannot say that the discretion was abused.

2. The defendant Keeler argues that portions of the judge's charge were erroneous and that the judge erred in failing to grant requests numbered 3, 4, 6 and 8.  Before discussing them it will be necessary to set forth in greater

detail some of the facts which could have been found with respect to the ownership and operation of the tractor and trailer comprising the truck involved in the accident. The tractor, which was driven by the defendant Hamilton, was owned by the defendant Keeler and was registered in his name; the trailer was owned by Shawmut. Shawmut was engaged in transporting freight between Boston and New York. Prior to the accident Keeler had leased the tractor to Shawmut under a lease which recited that while the tractor was "under the direction and control of . . . [Shawmut] it shall be operated only by the lessor while in the employ of . . . [Shawmut] as a driver or such other employee of . . . [Shawmut] that may be mutually agreed upon." Keeler was paid about $60 by Shawmut for the use of his tractor for each trip between New York and Boston. He bought the gasoline and oil for the truck and paid Hamilton's wages. Keeler hired Hamilton and considered that "he was the one to fire him." Keeler carried insurance, at least for an amount required under a Massachusetts compulsory policy, covering liability for personal injuries and death arising out of the use of the tractor. Under the lease with Shawmut, Keeler was required to maintain the tractor in good working order. The destination of the truck was determined by Shawmut's dispatcher. Once the truck left Shawmut's freight terminal in Brooklyn Keeler "would have no say over the direction of the route which it took." Shawmut had an interstate commerce commission franchise to act as a common carrier, and on the night of the accident the freight on the truck "was carried in the usual business of . . . [Shawmut] as a common carrier under . . . [its] I. C. C. franchise and under the department of public utilities plates." [1]

Requests numbered 3, 4 and 6 in effect asked for instructions that if Shawmut at the time of the accident had exclusive control over Hamilton's conduct Keeler would not

---

[1] There was evidence that the department of public utilities of Massachusetts had issued a plate which allowed Shawmut to operate Keeler's tractor within the Commonwealth pursuant to the provisions of G. L. (Ter. Ed.) c. 159B, inserted by St. 1934, c. 264, § 1, and amended, and that this "plate was in full force and effect on February 28, 1942."

be liable. An examination of the charge reveals that these were given in substance. The judge was not required to employ the precise language of the requests. *Reidy* v. *Crompton & Knowles Loom Works,* 318 Mass. 135, 141.

The eighth request was as follows: "If you find that the tractor was under lease to the Shawmut Transportation Co. and was being used by it in its usual business as a common carrier under a license or franchise from any governmental agency, the Shawmut Transportation Co. would have a direct responsibility to the public, and would be liable in this action if there is negligence on the part of the operator of the vehicle *and the defendant Keeler would not be liable*" (emphasis supplied). For reasons that will appear later when we come to discuss the exceptions of Shawmut, this request was substantially correct except for the clause in italics. But with the italicized words it was not correct. The jury could have found that Shawmut was liable because its duty was nondelegable and that Keeler was liable because he was Hamilton's employer. See *Wall's Case,* 293 Mass. 93, 94; *Garfield* v. *Smith,* 317 Mass. 674, 680, and cases cited; *Venuto* v. *Robinson,* 118 Fed. (2d) 679, 682 (C. C. A. 3). The judge, therefore, did not err in refusing to grant this request. There are instances where it has been held that a request, although not strictly accurate, was sufficient to direct the judge's attention to an important principle of law which he ought to deal with in the charge, and that his failure to do so was error. *Bergeron* v. *Forest,* 233 Mass. 392, 402. *Bell* v. *Dorchester Theatre Co.* 308 Mass. 118, 123. *Higgins* v. *Pratt,* 316 Mass. 700, 712. But this principle, if applicable, does not aid Keeler. The judge, it is true, gave no instructions to the effect that Shawmut might be found liable if the tractor was used in connection with its franchise. But this was not prejudicial to Keeler. If anyone was harmed by the judge's failure to deal with this question it was the plaintiffs.

Keeler excepted to that portion of the charge which discussed the principles of law that were applicable in determining whether Hamilton was the servant of Keeler or of Shawmut. Reading the charge as a whole, we are of

opinion that it correctly stated the principles to be applied.

Keeler also excepted to the judge "stating that the jury could disregard all reference to the I. C. C. franchise." But no such statement appears in the charge. The judge, to be sure, instructed the jury that they could disregard the evidence concerning the regulations of the interstate commerce commission, since there was no evidence as to what they were. If the exception can be stretched to refer to this portion of the charge, there was no error. Assuming, without deciding, that the courts of the Commonwealth are required to take judicial notice of these regulations,[1] none of them has been brought to the attention either of the trial court or of this court, and nothing contained in Keeler's brief discloses what bearing, if any, these regulations would have on the rights of the parties. Keeler has failed to show that he was in any way prejudiced by this part of the charge.

3. Finally the defendants Hamilton and Keeler urge that the manner in which the trial judge dealt with the various motions for new trials was prejudicial to them. There is nothing in the exceptions to the granting of new trials on the issue of damages in the actions brought against them by Barry. This was clearly within the discretion of the trial judge. *Baxter* v. *Bourget,* 311 Mass. 490, 493. *Bartley* v. *Phillips,* 317 Mass. 35, 41–42. Moreover there is nothing in the bill of exceptions that relates in any way to the issue of damages. Nor were the defendants Hamilton and Keeler prejudiced by the granting of new trials to two of the plaintiffs (Barry and Gruberski) in the cases against Shawmut. This likewise was within the discretion of the judge. If, as the defendants argue, this was done because the judge evidently realized that his instructions with respect to Shawmut's liability by reason of its franchise were erroneous, this was not prejudicial to Hamilton and Keeler.

---

[1] These regulations are found in the Federal Register. In U. S. C. (1940 ed.) Title 44, § 307, it is provided that "The contents of the Federal Register shall be judicially noticed." To what extent, if at all, this statute was intended to apply to proceedings in State courts was left open in *Glover* v. *Mitchell,* 319 Mass. 1, 3–4.

Their liability and that of Shawmut, as noted above, were not mutually exclusive. All of the defendants could have been found liable. It may also be, as the defendants urge, that logically the judge should have granted new trials against Shawmut in the cases of Grison and McDonald, but that does not concern Hamilton and Keeler.

## II. EXCEPTIONS OF THE DEFENDANT SHAWMUT.

As we have noted above, the jury found for the defendant Shawmut at the first trial in all cases brought against it. At the second trial the plaintiffs Gruberski and Barry, to whom new trials had been granted, obtained verdicts against Shawmut. At this trial the cases brought by Barry against Hamilton and Keeler were also retried, but only on the issue of damages.

1. Shawmut at the first trial excepted to being ordered to trial in the absence of Hamilton and renewed its exception at the opening of the second trial. In support of its exception it invokes the provision of the soldiers' and sailors' civil relief act discussed above. But as we have previously stated in dealing with the exceptions of Hamilton and Keeler, this act applies only to persons in the military service. Shawmut, therefore, was not entitled to invoke it. As in the case of Keeler, we cannot say that the trial judge abused his discretion in denying a continuance.

2. At the first trial the judge instructed the jury in substance that either Keeler or Shawmut could be found to be liable for Hamilton's conduct but not both. To this statement the plaintiffs did not except. Shawmut argues that this instruction became the law of the case and that since the plaintiffs' verdicts against Hamilton and Keeler were allowed to stand, at least as to liability, the judge was precluded from granting new trials in the cases against Shawmut. If the judge followed the theory of law set forth in his charge, it is difficult to see on what basis he granted new trials in the cases against Shawmut. But he was not obliged to follow it. He might have come to the conclusion that he erred in not instructing the jury that Shawmut

might be liable because of the nature of its business even if they found that Keeler was an independent contractor. There is no principle of law which precludes a judge from repudiating a rule previously applied by him in the trial of a case. See *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31, 33; *Jamnback* v. *Aamunkoitto Temperance Society, Inc.* 273 Mass. 45, 50; *Peterson* v. *Hopson*, 306 Mass. 597, 601–602, and cases cited. Lummus, The "Law of the Case" in Massachusetts, 9 B. U. L. Rev. 225, 232–235. It would be unfortunate if the ruling of a judge, once made, would be beyond recall. Neither reason nor authority supports such a proposition.

3. Shawmut contends that in the Gruberski and Barry cases the judge erred in denying its motions for directed verdicts. It argues that the evidence afforded no basis for a finding that Hamilton was under its direction and control at the time of the accident. If we assume, without deciding, that this was so, the plaintiffs would still be entitled to go to the jury against Shawmut. Even if as matter of law Keeler was an independent contractor and liable for Hamilton's conduct, Shawmut might nevertheless be liable. To the rule that one who employs an independent contractor is not ordinarily liable for his negligence or that of his employees there are several exceptions. One of them is stated by the American Law Institute in Restatement: Torts, § 428, in these terms: "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." Decisions supporting this rule are *Venuto* v. *Robinson*, 118 Fed. (2d) 679 (C. C. A. 3), *Hodges* v. *Johnson*, 52 Fed. Sup. 488 (D. C. W. D. of Va.), *Cotton* v. *Ship-By-Truck Co.* 337 Mo. 270, 278, *Bates Motor Transport Lines, Inc.* v. *Mayer*, 213 Ind. 664, 671–673, and *Duncan* v. *Evans*, 134 Ohio St. 486. See *Woodman* v. *Metropolitan Railroad*, 149 Mass. 335, 339–340; *Boucher* v. *New York, New Haven & Hartford Railroad*, 196 Mass. 355, 359–360. See also note

28 A. L. R. 122, et seq. We accept the principle of this statement but without adopting the word "unreasonable" as wholly appropriate in this connection. The rationale of the rule is that it is considered contrary to public policy to permit one engaged in such an activity to delegate his responsibility to others. This principle is applicable here. The evidence discloses that Shawmut on the day of the accident was transporting freight under franchises granted to it by the interstate commerce commission and by the department of public utilities. And we agree with the statement in *Venuto* v. *Robinson*, 118 Fed. (2d) 679 (C. C. A. 3), at page 682, that "The carriage of freight in high powered motor vehicles on public highways is certainly business attended with very considerable risk." The case of *Garfield* v. *Smith*, 317 Mass. 674, relied on by Shawmut, did not decide that one in the position of Shawmut could not be held liable under the rule just discussed.

The exception to that portion of the charge which dealt with this principle likewise must be overruled. The instructions on this point were complete and accurate.

4. Shawmut, in the Gruberski case, excepted to the exclusion of evidence of the verdicts returned by the jury at the first trial in favor of that plaintiff in the cases against Hamilton and Keeler. Exceptions were also taken to that portion of the charge which permitted the jury to fix damages for death and conscious suffering of Gruberski's intestate in amounts in excess of those established by these verdicts. If these rulings were wrong they were prejudicial to Shawmut because the verdict against it was substantially in excess of the verdicts against Hamilton and Keeler at the first trial. We are of opinion that the rulings were right and that the exceptions to them must be overruled.

It is true that, if judgments had been obtained against Hamilton and Keeler, Shawmut could have introduced them in evidence and would have been entitled to an instruction that, although not bound by the judgments, it could not be held liable for an amount in excess of them. The applicable rule of law in such a case is found in § 96 of the Restatement of Judgments which reads: "(1) Where two persons are

both responsible for a tortious act, but one of them, the indemnitee, if required to pay damages for the tort, would be entitled to indemnity from the other, the indemnitor, and the injured person brings an action against the indemnitor because of such act, a valid judgment . . . (b) for the plaintiff binds him as to the amount of recovery in a subsequent action by him against the indemnitee, but does not bind the indemnitee in any respect." Illustration 3 under this section is as follows: "A, who is B's servant, injures C. In an action by C against A judgment is given for C in the amount of $1000. In a subsequent action by C against B on the ground that A was negligent in the scope of his employment, C's possible recovery of damages is limited to $1000."

The reason for the rule is this. The indemnitee is in effect a surety of the indemnitor, and, to the extent that the latter's wrongful conduct has subjected him to liability to a third person, he is entitled to be indemnified. Restatement: Restitution, § 96. Restatement: Agency, § 401. *Karcher* v. *Burbank,* 303 Mass. 303, 308. *Losito* v. *Kruse,* 136 Ohio St. 183, 188. *Kramer* v. *Morgan,* 85 Fed. (2d) 96 (C. C. A. 2). See *Hollywood Barbecue Co. Inc.* v. *Morse,* 314 Mass. 368. But inasmuch as the right of the surety to indemnification is derivative, it can rise no higher than that of the third person in whose right he sues. *Kramer* v. *Morgan,* 85 Fed. (2d) 96 (C. C. A. 2). Thus it is considered unfair to the indemnitee to permit a recovery against him in excess of that which he could recover over against the indemnitor. Restatement: Judgments, § 96, comment d.

The rulings of the trial judge were not at variance with the principles just discussed. The verdicts against Hamilton and Keeler, the indemnitors, had not ripened into judgments and bound nobody. And they might never become judgments. Exceptions were then pending, and, in the event that they were sustained by this court, the cases would have to be tried anew. On a retrial, other verdicts might have been returned. The judge could not foresee what the outcome would be. He was required to

deal with the situation as it existed at the time he made his rulings.

However, as a result of the overruling of the exceptions of Hamilton and Keeler, Gruberski's cases against them will now go to judgment. Under the principles discussed above those judgments fix Shawmut's rights of indemnification against them. Should the verdict against Shawmut ripen into a judgment, it would be compelled to pay a larger amount than it can recover over against its indemnitors. To avoid that injustice, we think that the circumstances are such that this court under G. L. (Ter. Ed.) c. 231, § 124, should order that judgment be entered for the plaintiff Gruberski in the same amount (except for such differences as there might be in the matter of interest and costs) as that established in her judgments against Hamilton and Keeler. Section 124 provides that "Whenever a question in dispute at the trial of an issue of fact in any civil action or proceeding depends upon the decision of a question of law, the full bench of the supreme judicial court, upon appeal, exceptions or report or otherwise, may, if satisfied that it has before it all the facts necessary for determining the question in dispute, direct that such judgment or decree be entered . . . as shall accord with the determination of the full court . . . ." See *Adams* v. *Silverman*, 280 Mass. 23, 29–30. All the facts necessary for determining the rights of the parties are before us; no additional facts have to be established. The plaintiff cannot be heard to complain, for had the cases been tried together, as they originally were, the amount recovered against each of the defendants would have been the same. Shawmut ought not to be prejudiced because of the fortuitous circumstance that the case against it was retried separately.

We have discussed the principal contentions of Shawmut. Other questions argued by it have not been overlooked. We find nothing in them that requires discussion.

The entry in all of the cases must be

*Exceptions overruled.*