Enter.

GLOBE INDEMNITY COMPANY

v.

WOBURN NATIONAL BANK.

Civ. A. No. 54–836.

United States District Court
D. Massachusetts.

Aug. 29, 1955.

834

Paul J. Dolan, Boston, Mass., Palmer, Dodge, Gardner & Bradford, Boston, Mass., for plaintiff.

David H. Fulton, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This case comes before this Court on defendant's motion to dismiss, sometimes referred to by the parties as defendant's motion for summary judgment. Both parties have filed affidavits.

Cushing, who is not a party to or intervenor in this case, was employed as an adjuster by plaintiff, The Globe Indemnity Company, a New York corporation, between 1951 and 1954. During that time he submitted to his employer fictitious claims in the names of fictitious persons and also fictitious settlements of those claims. Cushing, or other employees of plaintiff, relying upon Cushing's fictitious settlements, then drew separate drafts. [These are set forth *in extenso* in plaintiff's answer to defendant's motion for more definite statement.] Together all the drafts totalled approximately $17,000. Each draft was payable to a different fictitious claimant, was drawn upon plaintiff, and was payable through Bankers Trust Company, New York. Cushing, after placing upon each draft an endorsement in the name of the fictitious claimant-payee, negotiated it for cash at The Woburn National Bank, a Massachusetts corporation, defendant herein. That bank in turn endorsed each draft. In due course, Bankers Trust Company paid the drafts and charged plaintiff's account accordingly.

Invoking the diversity jurisdiction of this Court plaintiff sues defendant *for* the losses it sustained on being charged for the payment of these drafts. The gist of the complaint is not in contract based upon defendant's endorsement but in tort upon the theory that defendant "negligently cashed" these drafts. According to the affidavits, it would seem that plaintiff seeks to prove that defendant knew facts from which it should have known that Cushing was engaged in a fraudulent scheme founded upon forged drafts.

Defendant first filed an answer denying its negligence as well as asserting miscellaneous defenses. Then on May 24, 1955 it filed the present "motion to dismiss and supporting affidavit." Therein it contends that defendant is not liable because plaintiff has covenanted not to sue Cushing on account of his conduct in connection with the preparation, negotiation, and payment of these drafts.

In support of its position defendant filed certified copies of both the court record and of the transcript of hearings in the criminal case entitled Commonwealth v. Robert R. Cushing, Commonwealth of Massachusetts, Superior Court for Middlesex County, No. 46027. Therein it appears that the Middlesex Grand Jury at its October 1954 sitting returned an indictment in 20 counts charging that Cushing "did steal" various amounts "property of Woburn National Bank." [These amounts correspond with the drafts shown in plaintiff's "more definite statement" in this Court.] On March 23, 1955, after the instant civil action had been brought in this Court, Cushing appeared before the State Court at a hearing attended also by his counsel, the Commonwealth's Assistant District Attorney, and Paul J. Dolan, Esq. who (at page 8 of the transcript) informed the state judge that he was there to "represent the insurance company."

Cushing pleaded guilty to the indictment. Before the judge imposed sentence, defendant Cushing's counsel said that his client's father-in-law was prepared to offer $10,000 to The Globe Indemnity Company as restitution, and that "I understand if the Court approves, the civil side of the case could be settled

on a covenant not to sue for the sum of ten thousand dollars" (p. 4). "Mr. O'Neil has been representing the father-in-law * * * and in the negotiations with Mr. Paul Dolan, who is representing the Globe Indemnity here, they have worked out this arrangement for the civil case, if Your Honor approves it." (p. 7). Thereupon, the state judge made inquiry of Mr. Dolan who responded— "I am satisfied with the amount of the settlement on the civil side of the case and am prepared to give them a covenant." (pp. 8–9) The state judge before imposing sentence on Cushing remarked "I wouldn't let his father-in-law put up ten thousand dollars unless he was seeing some results in the restitution and if the insurance company for whom this man worked is satisfied with that ten thousand dollars to wipe out the indebtedness of this Defendant." (p. 9) The state court then imposed a suspended sentence, one of "the terms of probation being that ten thousand dollars be paid forthwith to the Globe Indemnity Company."

Plaintiff's counter-affidavit (p. 2) says that "at no time was any agreement of any nature made by the Globe Indemnity Company or any representative of it with Robert R. Cushing." That assertion apparently means only that Cushing himself, unlike his father-in-law, never received any written promise. Certainly it does not imply that plaintiff has now reneged on the "covenant not to sue", which plaintiff specifically admits in the previous sentence in the counter-affidavit, and which was given under circumstances previously related. What the counter-affidavit seems chiefly to urge is that the covenant does not warrant a dismissal of this suit in the United States Courts because the covenant was made with Cushing's father-in-law. Moreover, as additional grounds for not regarding the covenant as a bar to its suit, plaintiff argues that it has not yet received full satisfaction of its claim of a liquidated debt of approximately $17,000, and that hence the covenant should not preclude plaintiff from recovering the balance of approximately

$7,000 from this defendant which is independently liable for its own negligence in not detecting the forged drafts and which does not stand vis-a-vis Cushing or his father-in-law in the relation of employer, employee, surety, principal, agent, or other status of privity.

■ 1. The first question is to whom plaintiff's promise was made. In its argument plaintiff assumes that what we are dealing with is a promise made by it to Cushing's father-in-law and enforceable only by him and then only according to the letter of a covenant not produced as an exhibit in this Court. This is a misconception. On March 23, 1955 plaintiff, through its duly authorized attorney, entered into a stipulation in open court to induce a state judge to make a certain disposition of a criminal case. This was in effect a promise to the state court which no court, state or federal, will knowingly permit plaintiff to escape. It is thus as it were a self-enforcing disability which plaintiff imposed upon itself. Even though neither Cushing nor his father-in-law is here to protest, defendant can insist upon plaintiff's disability.

■ 2. The next question is what are the terms of that promise and hence of the disability. Examination of the state court record makes me conclude that plaintiff agreed not to prosecute any action in any court at any time which would impose further financial liability directly or indirectly upon Cushing on account of the forged drafts. The language used in the extemporaneous court colloquies is not so specific as this statement of mine; yet the actual words used in the criminal case and the disclosed intent of the lawyers and the judge fully support this statement.

■ 3. Thus the ultimate question is whether if plaintiff insurance company should recover from defendant bank on the theory of the bank's negligence in not detecting Cushing's forgery, the bank would then have an action over against Cushing for the amount of the recovery to which it had been subjected.

That such a recovery over would be permitted is well established. Plaintiff's contrary contention comes from its mistaken assumption that. defendant and Cushing were joint tortfeasors or were *in pari delicto*. On the view most favorable to plaintiff, defendant bank was innocent of any deliberate wrongdoing; the bank was a naive accomplice failing to detect the nefarious scheme of a criminal forger, Cushing. Even if we assume that the bank was negligent, as between it and Cushing the relationship was one not of joint tortfeasors but of indemnitee and indemnitor. The general rule as stated in Restatement, Restitution § 89 under the heading Tort Induced By Fraud is:

"A person who is induced by the fraud of another to believe that his conduct is lawful and in reliance upon that belief does an act because of which both are liable in tort, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability if, as between the two, his reliance was justifiable."

For that principle this pertinent illustration is given:

"A steals a claim-check for baggage belonging to B stored at the railroad station. A pays C $1.00 to obtain the baggage for him from the station. Carelessly believing A to be the owner, C presents the claim-check, obtains the baggage and delivers it to A. Having settled B's claim against himself, C is entitled to restitution from A."

While there seem to be few court cases so vividly relevant as the foregoing suppositious case, yet the basis of the rule and its fundamental soundness are almost self-evident. Cognate rules have indeed been applied to many situations where one who has been held liable in tort has sought and secured indemnification and reimbursement from another whose tortious conduct misled him into error. Hollywood Barbecue Co., Inc., v. Morse, 314 Mass. 368, 369, 50 N.E.2d 55; Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232, 236–237, 59 N.E. 657, 51 L.R.A. 781; Manning Mfg. Co. v. Hartol Products Corp., 2 Cir., 99 F.2d 813; Barber S. S. Lines, Inc. v. Quinn Bros., D.C.Mass., 104 F.Supp. 78. See F. H. Bohlen, Fifty Years of Torts, 50 Harv.L.Rev. 1225, 1239 note 26.

■■ Since if defendant bank were in the instant action required to pay a judgment to plaintiff insurance company, defendant bank would have a right to indemnification from Cushing, plaintiff is barred from procuring judgment in this action. For plaintiff has promised the state court that it never will subject Cushing directly or derivatively to further civil liability on account of the forged drafts. In short, if one gives a promise not to hold another liable he disables himself from procuring judgment not only from that other, but from anyone else standing in the relation of an indemnitee to that other. Karcher v. Burbank, 303 Mass. 303, 309–310, 21 N. E.2d 542, 124 A.L.R. 1292; Barry v. Keeler, 322 Mass. 114, 128, 76 N.E.2d 158.

Motion for summary judgment for defendant granted.