Forte, J.
This is an action in tort to recover for personal injuries sustained by a taxicab passenger, plaintiff Felice Teixeira, when she was assaulted by the driver of the taxi, defendant Jean R. Cadet (“Cadet”).
Cadet was the owner of the vehicle he operated as a taxi, but he leased the taxicab “medallion”[2] from its owner, defendant Car Cab Three, Inc. (“Car Cab”). Car Cab registered Cadet’s vehicle in its own name (Mass. Regis. #TA3224), insured the vehicle with Hanover Insurance Company and listed Cadet as one of its drivers.
Counts 1 and 3 of the plaintiff’s complaint sought damages against Car Cab for negligent supervision of Cadet and for breach of its duty as a common carrier. Count 2 charged Cadet with assault and battery.[3] In its answer, Car Cab admitted that it leased a taxicab and medallion to Cadet, but denied that Cadet was its servant, agent or employee.
The reported evidence indicates that on March 7, 1989, the plaintiff called the Red & White Cab Company[4] and ordered a taxi to take her and her two children from their home in Dorchester to the Patrick O’Hearn Elementary School, and to return the plaintiff to her home. A Red & White taxi bearing Massachusetts Registration #TA3224, registered to Car Cab and operated by Cadet arrived in response to the plaintiffs call. The plaintiff informed Cadet that it would be a roundtrip fare.
When Cadet was unable to park in front of the school because of traffic, the plaintiff told Cadet that she was going to watch her children walk up to the front door of the school. She then exited the taxi with her children and accompanied them part way up the school walk, stopping at a point about twenty to thirty feet from the taxi. Cadet, allegedly concerned about the fare, suddenly got out of the *155 taxi and demanded the money from the plaintiff. The plaintiff showed him a twenty dollar bill, and stated that she would pay the fare at the end of the roundtrip. Cadet then grabbed the plaintiff by the throat and began to slam her against a fence. The plaintiff sustained multiple injuries, including those to her neck, right shoulder and left wrist.
The trial court entered judgment for Car Cab on both counts 1 and 3 of the complaint The plaintiff filed numerous requests for rulings of law at the close of the evidence, and now claims to be aggrieved by the court’s disposition of the following:
11. The evidence warrants a finding that the defendant, Car Cab Three, Inc., was legally responsible for the conduct of the defendant, Jean R. Cadet.
DENIED.
34. When a license is required for the performance of acts, one having a license who delegates performance of the acts to another is subject to liability for the negligence of the other.
Mowed as a rule of law, but not relevant to the independent contractor relationship in this case.
35. Liability of a taxicab owner for injuries to a passenger does not depend on his contract with the driver; that without regard to the contractual relation, a taxicab owner is liable for any injury caused when the vehicle is driven with his permission and that under such circumstances, the owner is estopped from denying that the driver is his agent.
I do not find this to be the law in Massachusetts.
36. As a matter of law, the defendant, Car Cah Three, Inc., is responsible for the conduct of its operator despite the existence of a lease.
See No. 35.
38. The evidence warrants a finding that the defendant, Car Cab Three, Inc., is estopped from denying that the defendant, Jean R. Cadet, was its agent.
I do not find there was an agency relationship.
39. A common carrier is responsible to a passenger who is assaulted and insulted through the negligence or wilful misconduct of the carrier’s servant.
Mowed as a rule of law, but not applicable to the independent contractor relationship.
40. A common carrier is absolutely liable for the wilful misconduct of its servants.
See No. 39.
41. The evidence warrants a finding that the defendant, Car Cab, Three, is absolutely liable for the wilful misconduct of the defendant, Jean R. Cadet.
See No. 39.
1. This appeal presents what appears to be a question of first impression in this Commonwealth; namely, whether the owner of a taxicab “medallion” may be held liable for the tortious assault of a passenger by a taxicab driver to whom the owner *156 leases its medallion. We hold that the duty owed to a passenger by the owner as a common carrier encompasses responsibility for the actions of those who lease or otherwise use the owner’s public license to carry passengers for hire.
As the owner of a medallion or hackney carriage license, Car Cab was entitled to operate a taxi for the transportation of passengers for hire within the city of issuance; i.e., Boston. Town Taxi, Inc. v. Police Comm’r of Boston, 377 Mass. 576, 578 (1979). Although the medallion was affixed to a vehicle operated by Cadet, it was the medallion alone which permitted the use of that vehicle as a taxicab; and the medallion was issued to and remained that of Car Cab as the licensee. The duty of care imposed upon Car Cab was, therefore, that of a common carrier. Gilmore v. Acme Taxi Co., 349 Mass. 651, 652 (1965); Hathaway v. Checker Taxi Co., 321 Mass. 406, 411 (1947). See generally, as to definition of common carrier, First Nat’l Stores, Inc. v. H.P. Welch Co., 316 Mass. 147, 149 (1944); Gallant v. Gorton, 581 F.Supp. 909, 910 (D. Mass. 1984). As a matter of public policy, a common carrier is held to the highest standard of care, approaching that of an insurer. O’Malley v. Putnam Safe Deposit Vaults, Inc., 17 Mass. App. Ct. 332, 340 (1983); Zedros v. Kenneth Hudson, Inc., 11 Mass. App. Ct. 1007 (1981). The common carrier is thus obligated to guard its passengers against injuries suffered from not only the negligent conduct of its servants, but also the intentional torts of its employees as well as “the wilful misconduct of others.’’Hayne v. Union St. Rwy., 189 Mass. 551, 552 (1905).
A carrier is under an obligation ‘to use a very high degree of care to prevent injuries that might be caused by the ... wilful misconduct of others ... In the application of the rule to injuries caused by servants of the carrier while engaged in the performance of his contract of carriage, it is held that he is liable absolutely for their misconduct.’ Gilmore v. Acme Taxi Co., 349 Mass. 651, 653 (1965) ... Indeed, a common carrier is liable not only for the misconduct of its employees, whether or not within the scope of employment, but also for the wrongs of strangers, if they are inflicted on a person in its care.
Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 405-406 (1990).
2. Car Cab contends that Gilmore v. Acme Taxi Co., supra, is inapposite because the driver whose assault on a passenger was charged to the defendant taxi company therein was an employee of the company, whereas Cadet was an independent contractor rather than an employee or agent of Car Cab. Whether one is an independent contractor or an agent is a question of fact which depends in large measure on whether the contractor or the owner has the right to control the work. McDermott’s Case, 283 Mass. 74 (1933).
Car Cab contends that there was evidence that Cadet had leased Car Cab’s medallion for two to three years for a fixed weekly fee of $210.00; that, pursuant to Cadet’s medallion lease with Car Cab, Cadet was responsible for all operational expenses and equipment for the taxi, was required to permit Car Cab to inspect the vehicle at least four (4) times per year and to maintain valid driver’s and hackney driver’s licenses; and enjoyed the right to collect and retain all taxi fares. On the basis of such purported evidence, Car Cab relies on the general rule that one who hires an independent contractor is not liable for injuries caused by the tor-tious acts or omissions of the contractor or his servants. See, e.g., Ferguson v. Ashkenazy, 307 Mass. 197, 200 (1940).
3. It is unnecessary to review contrary evidence as to Cadet’s status, including Car Cab’s own representations to the Registry of Motor Vehicles and its insurance carrier that it owned Cadet’s vehicle and that Cadet was one of its drivers. It is essential to note instead, with respect to the general rule as to independent contractors cited by Car Cab, that
there are numerous exceptions ... Indeed, it has been said with some *157 plausibility that the general rule is ‘now primarily important as a preamble to the catalog of its exceptions’ [citation omitted]. The American Law Institute in its Restatement of Torts (§§410-429) devotes some twenty sections to the exceptions.
Whalen v. Shivek, 326 Mass. 142, 150 and n. 1 (1950). One of these exceptions is RESTATEMENT (SECOND) OF TORTS, §428 which pertains to work done under a public license or franchise and provides:
An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.
Section 428 has been accepted in Massachusetts, but the word “unreasonable” has not been adopted. Barry v. Keeler, 322 Mass. 114, 126-127 (1947). Although §428 expressly applies only to the negligence of an independent contractor, the public policy rationale of the Supreme Judicial Court in accepting §428 applies equally to a common carrier’s liability for the intentional torts of independent contractors who perform the work of the carrier pursuant to its license. In holding a motor freight carrier liable in accordance with §428 for the tortious conduct of an independent contractor, the Court stated in Barry v. Keeler, supra at 127:
The rationale of the rule is that it is considered contrary to public policy to permit one engaged in such an activity to delegate his responsibility to others ... The evidence discloses that [the carrier] ... was transporting freight under franchises granted to it by the interstate commerce commission and by the department of public utilities.
See also, Boucher v. New York, N.H. & H. RR., 196 Mass. 355, (1907) .[5]
4. The exception to the general independent contractor rule for public franchises and licenses, under which common carriers have been held liable for the torts of those who are neither agents nor employees, finds support in numerous other jurisdictions which have held that the duty of a common carrier cannot be delegated. Illustrative is Paige v. Red Top, Inc., 255 A.2d 279 (1969) in which the Appellate Division of the Supreme Court of New Jersey held that a taxi company was liable for a passenger’s injuries caused by the negligence of a driver who leased the taxicab and its fares and profits. The court stated:
The right to operate a taxicab is a franchise... The lease [by the driver] was not only a lease of [the taxi company’s] automobile but also of its franchise, a special privilege to use the public streets for private profit granted by a governmental agency pursuant to statutory authority ... ‘Where one operates a vehicle under a governmental franchise ... he assumes liability for the acts done by others to whom he grants permis *158 sion to use that franchise.’
Id. at 281. See also, e.g., Ex Parte Hicks, 537 So. 2d 486, 489 (Ala.1988); Faltysek v. Kloepfer, 279 N.E.2d 105, 108 (Ill. 1972). Further, common carriers have been held liable under the public franchise exception for not only the negligence, but also the intentional torts, of independent contractors. See, e.g., Tinkham v. Groveport-Madison Local School Dist., 602 N.E. 2d 256, 259 (Ohio 1991) (whether taxicab driver was employee or independent contractor, taxicab company was still liable for driver’s sexual assault on passenger in breach of carrier’s non-delegable duty).
5. Thus it is evident that the liability of a taxicab medallion owner for injuries resulting from an assault by the taxicab driver upon a passenger in the taxicab bearing the owner’s medallion does not depend on the driver’s status as an agent, employee or independent contractor. The medallion owner’s liability is instead a function of its non-delegable duty as a common carrier to protect its passengers. See generally, Quigley v. Wilson Line of Mass., Inc., 338 Mass. 125, 129-130 (1958). Just as a common carrier’s rights and duties cannot be delegated by assignment, lease or other permitted use of its public franchise or license, its liability for a breach of its duties cannot be avoided by such lease or transfer.[6]
It is the public policy underlying a common carrier’s duty which forms the basis of existing Massachusetts case law that a common carrier is liable for injuries resulting from the negligence of its independent contractors and from tortious assaults by its employees. It is the same public policy that warrants the conclusion in the instant case that Car Cab, a common carrier holding a taxicab medallion, is liable to the plaintiff, who was a passenger in the taxicab bearing Car Cab’s medallion, for injuries she sustained in an assault by the taxicab’s driver and lessee of Car Cab’s medallion.
Accordingly, the trial court’s judgment for defendant Car Cab Three, Inc. is hereby reversed and vacated. Judgment for the plaintiff against Car Cab on count 3 of her complaint in the amount of damages assessed by the trial court is to be entered.
So ordered.

The parties herein use the common term “medallion” to refer to what is officially a “hackney carriage license” issued by the Police Commissioner of the City of Boston pursuant to Chapter 386 of the Acts of 1963. See Boston Neighborhood Taxi Assoc, v. Department of Pub. Util., 410 Mass. 686, 687 (1991). A “hackney carriage license,” which is the public authorization or franchise for the operation of a vehicle as a taxicab, was the license owned by Car Cab and leased to Cadet. Such license is not be to be confused with a “hackney carriage driver’s license” which is simply the license to drive a taxi. Technically, a medallion is the metal tag bearing the police number issued for the taxi which must be affixed to, and visible from, the rear of the vehicle.

Cadet was defaulted, and damages in the amount of $8,000.00 were assessed against him on the basis of evidence of damages introduced during the trial of plaintiff’s claims against Car Cab.

Car Cab included with its answer a third-party complaint against Boston Dispatch, Inc., d/b/a Red and White Cab Association. The trial court allowed Boston Dispatch’s Dist./Mun. Cts. R. Civ. R, Rule 56 motion for summary judgment.

In holding the defendant-railroad liable for the negligence of an independent contractor hired by the defendant to maintain and operate its crossing gates, the Supreme Judicial Court held in Boucher. “But it does not follow that the defendant would not be liable for his failure to use due care for the protection of travellers at the crossing. If the gates were maintained in obedience to an order made under the R.L.C. 111, §192, we think it plain that the [defendant] could not relieve itself from liability for negligence ... by an arrangement with an independent contractor ... Even if there was no such order, and the jury found that it was the defendant’s duty to maintain them for the protection of the public, we are of opinion that it was a duty that could not be delegated, either to a contractor or a servant... "Id. at 359.

This is consistent with the Rules and Regulations For Hackney Carriages promulgated by the Police Commissioner of the City of Boston pursuant to Ch. 386 of the Acts of 1963, which were alluded to in oral arguments by Car Cab in reference to a medallion owner’s responsibilities vis-a-vis taxicab drivers. The Regulations restrict issuance of a medallion to the owner of a taxicab; expressly forbid the leasing or renting of taxicabs by medallion owners; prohibit the sale, assignment or transfer of any medallion or license without the written permission of the Police Commissioner; forbid the employment by a medallion owner of any taxi driver who does not hold an employment card issued by the Police Commissioner; forbid the assignment of any medallion taxicab to any driver whose driver’s license and hackney carriage license are not checked daily by the medallion owner; require the owner to keep a log of all trips made by the taxicab; and mandate the immediate surrender of a medallion by any medallion holder who ceases to be the owner of the taxicab.
The Regulations were not introduced into evidence at trial. Therefore, neither the trial court, nor this Division, could take judicial notice of such Regulations. Building Comm’r of Boston v. Santilli, 358 Mass. 816 (1971); Fournier v. Central Taxi Cab, Inc., 331 Mass. 248, 249 (1954). They are referenced here for informational purposes, and form no part of our decision in this matter.