MARY FERGUSON *vs.* SARAH ASHKENAZY.

Essex.     April 3, 1940. — November 1, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Negligence,* Fumigation, Independent contractor, One owning or controlling real estate, Contributory. *Landlord and Tenant,* Landlord's liability to tenant, Fumigation. *Practice, Civil,* Requests, rulings and instructions. *Evidence,* Relevancy.

The owner of an apartment building was liable to a tenant for personal injuries sustained because of negligence of an employee of the owner's independent contractor in assuring the tenant that it was safe to reënter the building before it had been properly aired to remove a poisonous gas used by the contractor in fumigating it.

Failure of a landlord of an apartment building to take precautions against a tenant's being injured by poisonous gas remaining on the premises when the tenant returned after an absence, insisted upon by the landlord during fumigation of the building by an independent contractor hired by the landlord, warranted a finding of negligence on the part of the landlord.

No error appeared in the refusal by a trial judge to grant a request for a ruling of law partly correct and partly incorrect.

Evidence that the janitor of an apartment building assured a tenant that it was safe to reënter the building after fumigation by poisonous gas was admissible on the question whether the tenant in entering was guilty of negligence contributing to injury which he sustained through gas remaining therein; and on that evidence and other evidence it could not properly have been ruled that the tenant was guilty of such negligence.

TORT. Writ in the District Court of Southern Essex dated December 1, 1937.

There was a finding by *Fay*, J., for the plaintiff in the sum of $950.

The case was submitted on briefs.

*J. W. Morgan*, *W. E. Sisk*, & *R. L. Sisk*, for the defendant.

*J. M. Fogarty*, for the plaintiff.

DONAHUE, J. This is an action of tort brought by a tenant against her landlord to recover damages for personal injuries. At the direction of the defendant, the plaintiff and the other tenants in a twelve-apartment house owned by the defendant vacated it in order that the building might be fumigated to destroy bugs and vermin therein. When the plaintiff returned to her apartment after the fumigation she was overcome by fumes still remaining in the building and was injured.

The case was tried in a District Court, where the judge found for the plaintiff. He filed no finding of facts found by him. He reported to the Appellate Division his denial of five requests for rulings filed by the defendant. The Appellate Division ordered the report dismissed.

The defendant made a contract with a company engaged in the business of fumigation by the terms of which the company, for a set price, agreed to fumigate the defendant's apartment house. The defendant's daughter, acting as

agent for her mother, told the plaintiff three days before the work was done that the house would be fumigated on the following Monday and that the plaintiff and the other tenants would have to leave the building and stay out while the building was being fumigated. The plaintiff said she was not feeling well. On the day set, the employees of the company arrived at the house at about 9:30 A.M. Neither the defendant nor her daughter was there. The plaintiff, who was seventy-three years old and ill, was reluctant to leave but finally went with the manager of the fumigating company in an automobile to the house of her niece, where she stayed until evening. The manager told the plaintiff that it would be two or three hours before the tenants could come back.

The manager of the fumigating company testified in part as follows: The process of fumigation adopted by the company required that all tenants should leave the building and stay out until the fumigation was completed. It also required that all openings in the building be sealed, including all doors, windows, pipes and places where air might enter. In each room and hall in the building a colorless gas was generated by mixing sulphuric acid and sodium cyanide. The gas was described by the manager of the company as "toxic and . . . fatal." When the building was thus sealed, barriers and guards were placed by the company at the side entrances and at the front doors, and signs were placed there which bore the words: "Danger-Fumigation-Poisonous Gas-Do not enter." The fumigation of a building of the size of the defendant's apartment house would take about three hours. The chemicals were then removed by employees of the company wearing proper gas masks, the windows and doors were opened, and the building was ventilated. Under ordinary circumstances tenants could safely return to the building in about two and a half hours after ventilation began.

A finding was warranted that the work undertaken by the company was not completed until the building was ventilated and had become fit for safe occupation by the tenants.

Since the evidence as to conditions and happenings at the apartment house when the plaintiff returned there in the evening was conflicting, we must here take the version of the evidence most favorable to the plaintiff. She returned to the apartment house at about 7:30 P.M. Employees of the fumigating company were then on the premises. She asked the defendant's janitor if she could go into the house. He answered in the negative, but said that she could enter in about half an hour. She then left and waited in a nearby grocery store. She returned to the defendant's apartment building at about 9:45 P.M. When she arrived there were ropes across the entrances. Some of the other tenants were seated on the steps. The janitor was there and he told her she could go in. She asked the manager of the fumigating company if it was all right to go in and he said "yes." She then proceeded to enter the building. At the time she entered there were no ropes, barriers or signs around the house. She went to her apartment, which was on the second floor, where she noticed a peculiar suffocating odor. She was taken sick and twice went to the piazza and vomited. As she was preparing to go to bed she lost consciousness and was taken to a hospital.

The defendant employed the fumigating company as an independent contractor to perform for a stipulated sum the work of fumigating her apartment building. The company had "done some fumigating for her in other houses." The evidence did not warrant findings that the defendant was negligent in selecting this company to do the work or in making the contract which she did make or that the defendant retained control of the manner in which the work should be done.

1. It is the general rule that "where one is employed under an entire contract for a stipulated sum, and is not under the control of his employer, the relation is held to be that of contractor and contractee, and not that of master and servant, and the contractor alone is liable for negligence in the performance of the work. There are, however, certain well defined exceptions to this general rule." *Herrick*

v. *Springfield*, 288 Mass. 212, 216. *Boomer* v. *Wilbur*, 176 Mass. 482, 484. Am. Law Inst. Restatement: Torts, § 835.

One such exception exists where an owner of real estate employs an independent contractor to do work thereon, and the nature of the work to be done is such that an inherently dangerous condition is thereby created which will cause injury to others unless guarded against. Where "the work to be performed necessarily will cause injury to others unless precautions are taken to protect them from the consequences of such work, the employer is liable for the negligence of an independent contractor." *McGinley* v. *Edison Electric Illuminating Co. of Boston*, 248 Mass. 583, 586. *Boucher* v. *New York, New Haven & Hartford Railroad*, 196 Mass. 355, 359–360. *Boomer* v. *Wilbur*, 176 Mass. 482, 484. Am. Law Inst. Restatement: Torts, § 835 (e).

On facts which the judge was warranted in finding, the present case falls within this exception to the general rule that frees an owner from liability for the acts of an independent contractor. The defendant required the plaintiff and the other tenants of the building to vacate their apartments and to remain out until the process of fumigation had been completed. This process entailed the creation of a dangerous gas and its dissemination throughout the entire building. Thus an inherently dangerous condition was created by the independent contractor, which continued not only during the time while gas was being generated but also for a considerable time thereafter and until, by ventilation, the gas had been driven from the building. By stationing a guard and placing ropes and warning signs at the entrances to the building the company for a time prevented harmful consequences from the dangerous condition it had created, but, while the harmful gas was still in the building, it discontinued all precautions to prevent harmful consequences therefrom and through its manager assured the plaintiff that it was safe to enter. The independent contractor having failed to guard against the harmful consequences of an inherently dangerous condition which it necessarily created in the performance of its contract with the defendant owner, the latter is liable for the negligence of the inde-

pendent contractor. *McGinley* v. *Edison Electric Illuminating Co. of Boston,* 248 Mass. 583, 586, and cases cited. *Medley* v. *Trenton Investment Co.* 205 Wis. 30, 36, 40. Am. Law Inst. Restatement: Torts, § 835 (e). The defendant's request for the ruling that the defendant was not liable for negligence of the independent contractor was rightly denied.

2. As the trial judge made no findings of the subsidiary facts on which he based his finding for the plaintiff, it is necessary to consider the defendant's second request for the ruling that there was "no sufficient evidence of any negligence on the part of the defendant."

An owner of real estate, apart from a vicarious liability for negligence of an independent contractor in the necessary performance of inherently dangerous work on the owner's premises, may be held liable for his own personal negligence in connection with the operation "if, through any lack of reasonable care on his own part in guarding against the known dangers of the undertaking, injury results from the negligence of those to whom he entrusts its performance." *McConnon* v. *Charles H. Hodgate Co.* 282 Mass. 584, 588. *Boomer* v. *Wilbur,* 176 Mass. 482, 484. *Curtis* v. *Kiley,* 153 Mass. 123, 126. *Woodman* v. *Metropolitan Railroad,* 149 Mass. 335, 340.

The defendant ordered the plaintiff and the other tenants in the building to vacate their apartments on a stated day in order that the building might be fumigated through the use of a gas generated therein by an independent contractor. She thus took from the plaintiff and other tenants control of their respective apartments and excluded them for a time from entering the building. It was understood by all persons concerned that the exclusion of the tenants would end sometime during the day or evening in question, depending on the time when the building should be free from harmful gas. The defendant ordered the plaintiff and the other tenants to vacate the apartments she had let to them but she did absolutely nothing more. In the performance of the contract which the defendant made with the independent contractor, a condition was created throughout the entire building which, while it existed, involved a

risk to a tenant entering the building. This was a danger reasonably to be expected from the work the independent contractor was hired to do, and hence the defendant owed the duty to the plaintiff to guard against such danger. There was evidence warranting the finding that the defendant violated this duty and was negligent. The judge rightly refused to give the defendant's request for the ruling that there was not sufficient evidence of negligence on the part of the defendant.

3. The defendant's third request sought the ruling "That the defendant is not liable for the alleged acts and declarations of the person or persons whom it is alleged advised the plaintiff that it would be safe for her to return to the premises." There was evidence that the general manager of the fumigating company and the defendant's janitor both told the plaintiff that she could enter the building before it was safe to do so. The defendant was liable for the negligent acts and declarations of the manager of the fumigating company which, as an independent contractor, had undertaken to perform an inherently dangerous work on the premises of the defendant. But, so far as disclosed by the record, it would seem that the duties of the defendant's janitor were not such that the defendant would be bound by his acts and declarations with respect to the plaintiff returning to her apartment. The requested ruling, as phrased, was in part erroneous since the defendant was liable for the acts and declarations of the general manager of the independent contractor. The request therefore could not properly be given. The trial judge was not bound to separate the correct from the incorrect part of the requested ruling and to give so much thereof as was not erroneous. If the defendant wished a ruling on the liability of the janitor's acts alone, such a ruling should have been expressly requested. *Squires* v. *Fraska*, 301 Mass. 474, 476–477, and cases cited. *Aste* v. *Putnam's Hotel Co.* 247 Mass. 147, 152. *Gardiner* v. *Brookline*, 181 Mass. 162, 163.

4. The trial judge, at the request of the defendant, reported his ruling admitting, over the defendant's objection, testimony of the plaintiff as to her conversations with

the defendant's janitor on the subject of her entering the building on the evening in question. The defendant did not state the ground of the objection. The testimony was admissible on the issue of the due care of the plaintiff in entering the building at the time of, and in the circumstances attendant on, her entry.

5. The judge refused to give the defendant's request for the ruling that the plaintiff was not in the exercise of due care. There were no admitted facts, and the evidence as to the circumstances existing when she entered the building and went to her apartment was conflicting. From the time she was taken from her home in the morning, she was justified in believing that at some time during the day or night she could return in safety to her apartment. There is nothing to indicate that she had any knowledge of the process used in fumigating the building with a dangerous gas, or as to the time when its dangerous effects would cease. The barriers and signs while in place at the entrance to the building gave notice of danger in entering the building. Their removal warranted the conclusion that the danger which had been guarded against no longer existed. Before entering the building she made inquiries of the representative of the fumigating company and of the janitor and was told that she might properly do so. She was aged and ill and at 10 P.M. she sought her bed in the apartment which the defendant had rented to her. No sign or barrier or voice then indicated that her entrance to the building was dangerous. The fact that when she reached her apartment she noticed an odor of gas, or her conduct up to the time she lost consciousness, did not require a finding that she was not in the exercise of due care. That question, as commonly, was here a question of fact. *Perry* v. *Stanfield*, 278 Mass. 563, 572. It could not properly have been ruled as matter of law that the defendant had sustained the burden of showing the plaintiff was lacking in due care.

*Order dismissing report affirmed.*