FRANCES BERMAN *vs.* ABRAHAM GREENBERG
(and two companion cases [1]).

Worcester. December 2, 1941. — September 14, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, & RONAN, JJ.

*Negligence,* Independent contractor, One owning or controlling real estate, Gasoline steam generator. *Practice, Civil,* Exceptions: whether error shown. *Error,* Whether error shown. *Evidence,* Relevancy and materiality, Independent contractor.

An owner of a building who used due care in hiring an independent contractor to remove wallpaper therein by a gasoline fired steam generating machine was not liable to one injured by an explosion of the machine caused by negligence of the contractor where it did not appear that use of the machine for such purpose was an inherently dangerous undertaking.

An exception to the exclusion of a question to a witness must be overruled in the absence of an offer of proof or anything to show what answer was expected.

Evidence that one hired by the owner of a building to do work therein gave the owner an estimate of the cost of the work was admissible to show the material fact that the workman was an independent contractor rather than a servant of the owner.

THREE ACTIONS OF TORT. Writs in the Superior Court dated May 24, 1939.

The cases were tried before *Burns,* J.

In this court the cases were argued at the bar in December, 1941, before *Field,* C.J., *Donahue, Dolan,* & *Cox,* JJ., and afterwards were submitted on briefs to all the Justices.

*H. R. Sher,* for the plaintiffs.

*M. J. Rubin,* (*J. C. McDonald* with him,) for the defendant.

---

[1] The companion cases were by Manuel Berman and Benjamin Conn, administrator, respectively, against the same defendant.

LUMMUS, J.   These are three actions of tort arising out of the explosion of a machine, generating steam by means of a gasoline boiler, for the purpose of removing wallpaper.  The first action is for personal injuries.  The second is brought by the husband of the plaintiff in the first case, and is for consequential damages resulting from the injury to his wife.  The third action is for the conscious suffering and death of the plaintiff's intestate.

The cases are here on exceptions by the plaintiffs to the direction of verdicts for the defendant and to the exclusion of certain evidence.

There was evidence tending to prove the following facts.  Frances Berman, the plaintiff in the first case, lived with her husband and her mother, Sadie Norris, the plaintiff's intestate in the third case, in a tenement owned by the defendant in Worcester.  Manuel Berman was a tenant at will, paying rent monthly.  Sadie Norris and the Bermans shared the rent.  In March, 1939, Manuel Berman spoke to the defendant, in the presence of his wife and mother-in-law, about repairing the tenement.  The defendant at first refused to repair, but when Berman threatened to move the defendant agreed to make repairs.  After some discussion, the defendant said that the wallpaper would be removed and replaced with new paper.  On April 24, 1939, the defendant came to the apartment with one Levey, a paper hanger and painter, and went through the rooms, followed by Manuel and Frances Berman and Sadie Norris.  The defendant directed Levey to take the paper off that day, and said that he would return to tell Levey what else to do.  The steam-making machine used in removing paper was there, and the defendant asked Levey whether that was what he used in removing paper.  Levey replied that it was a steamer used in removing wallpaper, and showed the defendant and Berman how he used it.  Levey had hired the machine.  Levey's son worked for and with Levey.  That evening the defendant returned to the apartment and found that Levey had quit work at four o'clock, and had removed the paper from only two rooms.  Manuel Berman told the defendant that Levey had told him that he could do five rooms a day but that the ma-

chine "was working terrible today and I couldn't do nothing with it. Sometimes I have to call up Mr. Winer the owner of the machine to get a new one."

On the next day the defendant came in and told Levey to take off the rest of the paper and said that he would return to tell Levey what else to do. Apparently after the defendant had gone, Levey poured gasoline from a container two feet high and one foot wide into the machine. There was a pan under the gasoline tank of the machine which was filled with water to keep the bottom of the machine cool. When he poured the gasoline, there was a slight overflow of gasoline into the pan. When he lighted the machine a flame appeared in the pan. Levey tried to smother the flame with a rug but did not succeed. He asked Frances Berman for a glass of water. Her maid handed one to Levey, who threw it on the flame, causing it to "smoke up." Frances Berman opened a window, and that caused more smoke. She was about to call the fire department at the request of Levey, when the machine exploded. Frances Berman suffered severe burns, and her mother was burned so badly that she died a few days later.

Levey testified that the machine was working all right until ten o'clock on the second day, at which time it ran out of gasoline and he filled it up. He testified that "the machine 'had a habit' of the gasoline igniting in the pan, . . . a small flame just a second." This time the flame was more stubborn, and was not extinguished before the explosion. The machine was operated by gasoline which heated water that produced steam. Levey testified that the defendant had no occasion to supervise his work, and did not supervise it.

An expert witness who examined the machine testified that the gasoline tank held about a gallon of gasoline, and that throwing water on gasoline will cause it to flare up and heat the fuel container located just above the pan and create "a pressure wave causing destruction wherever the wave went."

Before the work was started Levey gave the defendant an estimate of $150 for the job, exclusive of the new wall-

paper. There was no written contract. After the work was started the defendant told him to scrape windows, refinish and varnish them. Painting the woodwork was a part of the job from the beginning.

The case is not within the principle that one who contracts for the doing by another of work of an inherently dangerous character, such as blasting or burning or spraying poison or loosing dangerous gas, under circumstances in which injury to others is practically certain unless proper precautions are taken, is not absolved from liability by employing in the exercise of due care a suitable independent contractor and leaving the doing of the work to him. In such a case each person concerned in the undertaking is liable if through any lack of reasonable care in guarding against the known dangers of the undertaking harm to another results, even though the primary cause of the harm is the negligence of an independent contractor to whom the actual doing of the work is entrusted. *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91. *McConnon* v. *Charles H. Hodgate Co.* 282 Mass. 584. *Levesque* v. *Hildreth & Rogers Co.* 276 Mass. 429. *Herrick* v. *Springfield*, 288 Mass. 212. *Pannella* v. *Reilly*, 304 Mass. 172. *Ferguson* v. *Ashkenazy*, 307 Mass. 197. *Kunan* v. *DeMatteo*, 308 Mass. 427. See also *Bratton* v. *Rudnick*, 283 Mass. 556, 562; *Brandolino* v. *Carrig*, 312 Mass. 295. There was no evidence that removing wallpaper by the use of such a machine was an inherently dangerous undertaking within that principle. For all that appears such a machine was dangerous only when negligently maintained or used. See *Pitman* v. *Lynn Gas & Electric Co.* 241 Mass. 322, 324; *Giberti* v. *James Barrett Manuf. Co.* 266 Mass. 70, 73; *Cadogan* v. *Boston Consolidated Gas Co.* 290 Mass. 496; and *Smith* v. *Davidson Rubber Co.* 306 Mass. 617.

There being no evidence that Levey was a servant of the defendant or other than an independent contractor (*McDermott's Case*, 283 Mass. 74, 76; *Lappen* v. *Chaplik*, 285 Mass. 65), the case falls within the general rule that "the owner or occupant of a building who has used due care in selecting and agreeing with an independent contractor to do lawful

work, is not responsible to third persons for the negligence of such contractor or his servants in the performance of the contract, unless the nature of the work is such that a nuisance will be created or wrongful consequences be brought to pass unless guarded against." *Pickett* v. *Waldorf System, Inc.* 241 Mass. 569, 570. *Parker* v. *Taylor,* 295 Mass. 51, 55. *Bamberg* v. *Bryan's Wet Wash Laundry Inc.* 301 Mass. 122. *Kunan* v. *DeMatteo,* 308 Mass. 427, 429, 430.

The exceptions of the plaintiffs to the exclusion of evidence must be overruled. We need not consider its admissibility. The plaintiffs made no offer of proof, and do not show what the expected answers were or that the answers would have been favorable to them. *King* v. *Grace,* 293 Mass. 244, 246. There was no error in admitting the written estimate for doing the work. It had a bearing on the question whether Levey was a servant of the defendant or an independent contractor. Besides, the fact of the estimate had already appeared without objection, and the admission of the paper itself did no further harm to the plaintiffs.

*Exceptions overruled.*