ELIZABETH B. WHALEN, administratrix, *vs.* JENNIE SHIVEK & another
(and two companion cases[1]).

Suffolk.   January 4, 5, 1950. — June 13, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence*, Construction work, Independent contractor, One owning or controlling real estate, Dangerous work. *Landlord and Tenant*, Nuisance, Landlord's liability to third person. *Nuisance. Evidence*, Matters observed by jury. *Practice, Civil*, Exceptions: whether error harmful. *Error*, Whether error harmful.

A finding of negligence of a contractor toward a pedestrian on a public sidewalk was warranted by evidence that the contractor was hired to remove a parapet of heavy cement blocks backed with brick from the roof of a building immediately adjacent to the sidewalk; that when the contractor began work the parapet was in an obvious state of disrepair and the cement blocks tilted toward the street; and that, while employees of the contractor were working on the parapet with tools and without any barriers having been erected to prevent people from walking on the sidewalk below, cement blocks from the parapet fell on the pedestrian and killed him.

Liability of a contractor for negligence in removing a parapet of cement blocks from the roof of a building immediately adjacent to a public sidewalk, where such negligence contributed to the death of a pedestrian killed by blocks from the parapet falling on him as he was walking on the sidewalk, was not precluded by the fact that when the contractor began work the parapet was in such a state of disrepair as to constitute a nuisance rendering the owner of the building also liable.

After counsel at a trial had obtained for the record a description by a witness of gestures which he had made previously in the course of his

[1] The companion cases are by the same plaintiff against *Rossano Construction Company, Inc.*, and against *Modern Die & Machine Company*.

testimony in demonstrating the use of a tool, and a description by another witness of a sketch made by him and marked as a chalk, there was no error in a ruling that the jury were not bound by such descriptions but might consider the gestures and the sketch themselves.

Work performed by an independent contractor for a lessee of a building in removing a parapet of heavy cement blocks in a state of disrepair from the roof of the building above a public sidewalk might warrantably be found to be inherently dangerous to the public using the sidewalk below; and, upon a finding that it was inherently dangerous, the lessee was liable for the death of a pedestrian killed on the sidewalk by cement blocks caused to fall on him by negligence of the contractor in the performance of the work and in not having erected any barriers to prevent people from walking on the sidewalk.

Exceptions by a defendant to an instruction to the jury, and to a refusal of an instruction, relative to an issue which had been eliminated from the case by an amendment of the pleadings were overruled where it was apparent from the amended pleadings and the judge's charge as a whole that the jury were given to understand, and did understand, that the only issue was the issue raised by the amended pleadings.

The fact, that negligence of a contractor, hired by a lessee of a building, in removing a parapet from the roof of the building contributed to cause injury, would not preclude liability of the owner of the building for such injury based on the ground that he had leased the building with the parapet in such a state of disrepair as to constitute a nuisance.

In an action with a declaration containing counts based on negligence and counts based on nuisance for the same injury, a refusal of the judge to direct verdicts for the defendant on the counts for negligence did not harm the defendant where, although the evidence did not warrant verdicts for the plaintiff on the counts for negligence and there were verdicts for the plaintiff on all the counts, the evidence did warrant the verdicts on the counts for nuisance.

The owner of a building, who leased it knowing or chargeable with knowledge that a parapet of heavy cement blocks on the roof above a public sidewalk was in such a state of disrepair as to constitute a source of danger to the public and a nuisance, was liable for the death of a pedestrian killed on the sidewalk when blocks from the parapet fell on him as it was being removed from the roof by the lessee about three months after the making of the lease and while it was in force, notwithstanding that the lease provided that the lessee should be "responsible for the condition of the premises leased," should have "the right to make . . . alterations and improvements in and upon said premises," and should save the owner "harmless from all loss and damage occasioned by . . . any nuisance made or suffered on the premises."

THREE ACTIONS OF TORT. Writs in the Superior Court dated February 27, 1946, in the first two actions, and November 25, 1947, in the third action.

The actions were tried before *Broadhurst,* J.

    *J. W. Lobdell,* for the defendants Shivek and another.

    *D. H. Fulton,* for Rossano Construction Company, Inc.

    *L. Brown,* (*W. P. Cunningham* with him,) for Modern Die & Machine Company.

    *J. S. McKenney,* (*J. N. Esdaile* with him,) for the plaintiff.

    SPALDING, J.    Shortly after three o'clock on the afternoon of January 7, 1946, William B. Whalen, the plaintiff's intestate, was killed when a number of large stone blocks, forming the parapet of a building, fell on him as he was walking along the sidewalk on Hancock Street in the Dorchester section of Boston.   His administratrix brings these actions against the owners of the building, Jennie Shivek and Jennie Vershbow (hereinafter called the owners); the tenant thereof, Modern Die & Machine Company (hereinafter called the tenant); and Rossano Construction Company, Inc. (hereinafter called the contractor), which the tenant had engaged to do certain work on the building.[1]

    In the case against the owners the declaration is in four counts.   Counts 1 and 2 are based on negligence and seek recovery respectively for conscious suffering and death. The third and fourth counts are for conscious suffering and death and differ from the first and second counts in that they allege a nuisance.   The declarations in the actions against the tenant and the contractor are based on negligence, each declaration containing a count for conscious suffering and a count for death.   At the conclusion of the evidence the owners, the tenant, and the contractor presented motions for directed verdicts, which were denied.   A verdict was returned for the plaintiff on each count in each action.   Exceptions to the denial of these motions, to numerous rulings on evidence, and to portions of the charge and the judge's action with respect to various requests for instructions bring the cases here.

    The following facts could have been found: On October 9, 1945, the owners acquired title to a building in Dorchester

---

[1] The administratrix also brought an action against the husband of each of the owners.   But these actions need not concern us, for in each of them a verdict was directed for the defendant and the plaintiff did not except.

and on the same day leased it to the tenant.[1] It was an "L" shaped one story building, one portion of which fronted on Hancock Street and another on Pleasant Street. The wall of the building on Hancock Street — and it is that wall with which we are concerned here — was about eighteen feet high and thirty-five to forty feet long. It was constructed of cement or cast stone blocks. In the middle of the wall was a sliding door, on either side of which was a large window. Running along the top of the windows and the door was an iron rail which supported a concrete beam. The rail protruded out beyond the beam, forming a support for a facing of cast stone four inches thick which extended to the top of the concrete beam or roof. Extending above the roof for three feet was a parapet consisting of cast stone blocks of alternating thickness backed by bricks. Including the blocks and the bricks, the thickness of the parapet was about twelve inches. Originally the parapet above the door was capped by an ornamental pediment, but this had been removed prior to the purchase of the building by the present owners.

The building described above had been built in 1926 for use as a garage. The tenant, however, intended to use it for a machine shop, and on December 12, 1945, entered into a contract with the contractor which called for extensive alterations. These included the removal of the parapet mentioned above and its replacement with brick. Prior to the accident on January 7, 1946, the condition of the wall and parapet on the Hancock Street side of the property had been observed by several witnesses and the following is a summary of what they saw: The mortar between the stone blocks of the parapet was loose or missing, leaving a space through which "you could see daylight." Between the stone front and the bricks behind it was an opening, large enough for a boy to put his hand into, that ran the entire length of the wall. The stone blocks in the parapet tilted

---

[1] The term of the lease was for three years from October 9, 1945. — REPORTER.

out toward the street. The extent of this tilt was variously estimated as from one and one half inches to four inches.

Prior to and at the time of the accident two employees of the contractor were observed working either on the brick backing or on the stone facing of the parapet with hammers, crowbars, and various other tools. There were no barriers of any kind placed on the sidewalk below to keep people from passing in front of that portion of the building where the work was being done. At the time the plaintiff's intestate was injured all of the cement blocks in the facing and parapet on the Hancock Street side of the property fell onto the sidewalk. These blocks were about ten inches high and twenty inches long and weighed from one hundred seventy-five to two hundred pounds. It is conceded that the plaintiff's intestate was in the exercise of due care, that the accident caused his death, and that there was evidence of conscious suffering. Other evidence will be recited as occasion requires.

1. The contractor's motion for a directed verdict was rightly denied. The evidence amply warranted a finding that the men working on the parapet at the time of the accident were employees of the contractor engaged in performing work under the contract, and no contention has been made to the contrary. In carrying on its work on that part of the building which was immediately adjacent to the sidewalk the contractor was under a duty to perform it in a manner that would not create an unreasonable risk of harm to members of the public who might use the sidewalk. The evidence, in our opinion, warranted a finding that this duty was violated. The facts that at the time the contractor's employees were working on the parapet it was in an obvious state of disrepair; that it contained heavy cement blocks and was adjacent to a public sidewalk; that it tilted appreciably toward the street; that the contractor's employees were working on it with hammers, crowbars,[1] and other

---

[1] One witness testified that just before the accident the contractor's employees were loosening bricks on the parapet; that one of the men was prying at a cement block with something that looked like a crowbar; and that he (the witness) looked away for three or four seconds and then heard a crash.

tools; and that no barriers of any kind were erected to prevent people from walking on the sidewalk below, were sufficient to warrant a finding of negligence on the part of the contractor. *O'Neil* v. *National Oil Co.* 231 Mass. 20, 26. *McGinley* v. *Edison Electric Illuminating Co. of Boston,* 248 Mass. 583, 587.

The contractor argues that the proof against it left the question of its liability in the realm of speculation and conjecture. But we think that the evidence went beyond this. True, there was evidence that the parapet was in a defective condition at the time the contractor commenced to work on it. For this condition, of course, it was not responsible. But it was responsible for what was done thereafter. And, as we have indicated above, one of the circumstances to be taken into consideration on the question of its negligence was the condition of the parapet when it started to work on it. That the owners or the tenant may also be liable because of the condition of the parapet does not relieve the contractor of liability if its negligence contributed to cause the injury complained of. *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603, 611. The jury could have found that the acts of the contractor's servants were a substantial factor in causing the injury. That is sufficient. *Corey* v. *Havener,* 182 Mass. 250. *Oulighan* v. *Butler,* 189 Mass. 287, 293. *Shultz* v. *Old Colony Street Railway,* 193 Mass. 309, 321. *Field* v. *Gowdy,* 199 Mass. 568, 572. *Burke* v. *Hodge,* 217 Mass. 182, 184. *Camp* v. *Rex Inc.* 304 Mass. 484, 488.

During the course of the trial counsel for the contractor obtained from one witness (who had demonstrated with gestures how the crowbar was used on the parapet) a description of the gestures for the record. Another witness gave a description of a sketch of the parapet which he had made and which had been marked as a chalk. With respect to the witnesses' descriptions of the sketch and gestures the judge ruled, in substance, subject to the contractor's exception, that the jury were not bound by them and could consider the gestures and the sketch themselves if they saw

fit. There was no error. Because a witness may have described a gesture or a sketch does not entitle a party to a ruling that the description alone can be treated as evidence. True, the description gets into the record and the gesture and sketch do not. But that is a difficulty inherent in the trial of cases. Moreover, many gestures and sketches might be difficult to describe accurately in words. Views ordinarily cannot be accurately reproduced in a record, yet this has never been considered a sufficient reason for not permitting them or for limiting the judge or jury to considering only so much of the view as may have been described in court. See *Keeney* v. *Ciborowski*, 304 Mass. 371, 372–373.

The contractor argues that it was prejudiced by the manner in which the judge dealt with the contract and specifications under which the alterations on the building were being made. We see no basis for this contention. The judge charged the jury that the contract was being admitted on the question of control and that nothing contained in it "enlarge[d] upon the duty owed by the contractor to any member of the public." At the conclusion of the charge there was a colloquy between the judge and counsel for the contractor, during which the latter directed the judge's attention to provisions in the contract and specifications by which the contractor was to carry liability insurance protecting the tenant against claims for personal injuries and death arising out of the work under the contract, and suggested that these portions of the documents be eliminated before they were taken by the jury. The judge adopted the suggestion, and the agreement and specifications were given to the jury with the objectionable portions eliminated. No exception was taken to this method of dealing with the matter. It would appear that the contractor got all that it asked for or was entitled to. No contention is or could be made that the contract or specifications were wholly inadmissible.

Likewise without merit is the exception relating to the lease. The lease, which was clearly admissible on the question of control as between the owners and the tenant,

was admitted in evidence. At the pre-trial of the case the owners and the plaintiff agreed that the property had been leased to the tenant "which lease was in full force and effect at the time of the alleged accident." The contractor excepted to various rulings of the judge to the effect that the contractor could not attack the validity of the lease. The rulings were right. Neither the plaintiff nor the parties to the lease had challenged it. The contractor had no standing to do so, for it did not in any way affect its liability, and the judge so instructed the jury.

The contractor was in no way harmed by the direction of verdicts for the defendants in the actions brought against the two male defendants, husbands of the owners, and its exception to that action is without merit. See *Warren* v. *Boston & Maine Railroad,* 163 Mass. 484, 485–486; *Munroe* v. *Carlisle,* 176 Mass. 199, 201. If anyone was harmed by that ruling it was the plaintiff and she took no exception.

Other exceptions argued by the contractor have not been overlooked. We find nothing in them that requires discussion.

2. The tenant's exceptions arise out of the denial of its motion for a directed verdict, rulings on evidence, portions of the charge, and the denial of certain of its requests for instructions.

The judge did not err in denying the tenant's motion for a directed verdict. In support of its motion the tenant argues that it entrusted the making of the alterations, including the removal of the parapet, to the contractor, and that at the time of the accident the contractor rather than the tenant was in control of the premises. Since, it is argued, the work under the contract was not inherently dangerous, there is no basis for holding the tenant answerable for what was done by the contractor.

There can be no doubt on the evidence that the contractor was performing work on the building as an independent contractor rather than as employee of the tenant. The contrary has not been argued. In general it may be

said that "the employer of an independent contractor is not subject to liability for bodily harm caused to another by a tortious act or omission of the contractor or his servants." Restatement: Torts, § 409. *Herrick* v. *Springfield*, 288 Mass. 212, 216. *Ferguson* v. *Ashkenazy*, 307 Mass. 197, 200. But there are numerous exceptions to this rule. Indeed, it has been said with some plausibility that the general rule is "now primarily important as a preamble to the catalog of its exceptions." [1] One of these exceptions is that where the nature and circumstances of the work to be performed are such that injury to others will probably result unless precautions are taken, the employer is answerable for the failure of an independent contractor to take such precautions. *Wetherbee* v. *Partridge*, 175 Mass. 185. *Mc-Ginley* v. *Edison Electric Illuminating Co. of Boston*, 248 Mass. 583, 586. *Herrick* v. *Springfield*, 288 Mass. 212, 216–217. *Pannella* v. *Reilly*, 304 Mass. 172, 173. *Ferguson* v. *Ashkenazy*, 307 Mass. 197, 201. It has frequently been said that the work of the independent contractor for which the employer is held liable on this principle must be inherently or intrinsically dangerous.[2] Because the language used in stating this exception, however it may be phrased, is not susceptible of accurate definition, it is easier to state the principle than to apply it.

It has been held in the following cases that a finding that the work performed by the independent contractor was inherently dangerous was warranted. *Thompson* v. *Lowell, Lawrence, & Haverhill Street Railway*, 170 Mass. 577 (exhibition of marksmanship by handless man). *Wetherbee* v. *Partridge*, 175 Mass. 185 (blasting). *Herrick* v. *Springfield*, 288 Mass. 212 (burning timber land). *Pannella* v. *Reilly*,

---

[1] *Pacific Fire Ins. Co.* v. *Kenny Boiler & Manuf. Co.* 201 Minn. 500, 503. The American Law Institute in its Restatement of Torts (§§ 410–429) devotes some twenty sections to the exceptions.

[2] See, for example, Restatement: Torts, § 427, where the rule is stated as follows: "One who employs an independent contractor to do work which is inherently dangerous to others is subject to liability for bodily harm caused to them by the contractor's failure to exercise reasonable care to prevent harm resulting from the dangerous character of the work." See also *Berman* v. *Greenberg*, 314 Mass. 540, 543; Prosser on Torts, § 64.

304 Mass. 172 (use of poisonous spray in vicinity of vegetable garden). *Ferguson* v. *Ashkenazy,* 307 Mass. 197 (fumigating by poisonous gas). On the other hand, findings that the work was inherently dangerous were held not to be warranted in the following cases. *Boomer* v. *Wilbur,* 176 Mass. 482 (repairing chimney). *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91 (painting shutters). *Regan* v. *Superb Theatre, Inc.* 220 Mass. 259 (use of staging in painting theatre marquee). *Pickett* v. *Waldorf System, Inc.* 241 Mass. 569 (washing windows). *McCarthy* v. *Waldorf System, Inc.* 251 Mass. 437 (operation of sidewalk elevator). *Berman* v. *Greenberg,* 314 Mass. 540 (use of machine to produce steam in removal of wallpaper).

We recognize that the principle with which we are concerned does not apply to cases where the danger does not come from work performed with proper skill and care, "but comes only from an unskilful or negligent act of the contractor or his servants, even if a lack of skill or care on the part of some of the persons engaged in the business reasonably may be expected." *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91, 93. But we are of opinion that a finding was warranted in this case that the removal of the parapet by the contractor, in the circumstances disclosed here, involved work of such kind that it would probably cause injury to persons using the sidewalk below unless special precautions were taken. While the present case bears a superficial resemblance to *Boomer* v. *Wilbur,* 176 Mass. 482, on which the tenant heavily relies, we think that it is distinguishable. There the contractor was engaged to repair the defendants' chimney and while the work was going on a brick fell on the sidewalk and injured the plaintiff. The work there involved consisted in taking bricks off of the chimney for a few feet and relaying them. What happened, the court said, was "a mere detail of the work" arising from negligence which was not a probable consequence of the work. A different case is presented here where the contractor was engaged in removing from a building bordering on a public sidewalk a parapet contain-

ing blocks weighing approximately two hundred pounds and in a state of disrepair. See *Covington & Cincinnati Bridge Co.* v. *Steinbrock,* 61 Ohio St. 215. Compare *Engel* v. *Eureka Club,* 137 N. Y. 100.

In view of the foregoing the judge did not err in refusing to grant the tenant's ninth request to the effect that the work called for by the contract between it and the contractor could be performed without any inherent danger to the public.

The tenant excepted to the refusal of the judge to instruct the jury in accordance with its sixth request, which in substance was that there was no evidence that the tenant authorized the existence or continuance of a nuisance on its premises while they were in the control of the contractor. An exception was also taken to the following instruction given by the judge: "Neither does the tenant absolve himself from responsibility if, at the time he lets a contract for alteration of the building, that condition of nuisance still remains." The quoted sentence followed an instruction to the effect that the owners were not absolved from liability by letting the premises to the tenant if the condition of the premises at the time of the letting constituted a nuisance. As will be seen later, the instruction with respect to nuisance was germane to the case against the owners. But at the time the cases were submitted to the jury the question of nuisance was of no materiality in the case against the tenant. Originally the plaintiff's declaration in that case was based on negligence and nuisance, and another ground which need not concern us. At the conclusion of the evidence and before the charge the plaintiff presented a substituted declaration, in two counts, based on negligence, which was allowed. Apparently both counsel for the tenant and the judge labored under the misapprehension that the issue of nuisance was still in the case against the tenant and to the extent indicated above the judge discussed the question in his charge. Counsel for the tenant at no time directed the judge's attention to the fact that that issue was no longer in the case. Reading the charge as a whole and having in

mind the pleadings under which the case was submitted, we think that the jury were given to understand that the basis of recovery against the tenant was negligence. We are confirmed in this conclusion by the following special question submitted to the jury by the judge: "Was the work of taking down the Hancock Street parapet inherently dangerous to travellers in that street?" By answering that question in the affirmative at the time they returned their verdict it is apparent that the jury must have understood that the issue with respect to the tenant was negligence arising from the operations of the contractor for which, because it involved work which they could and did find was inherently dangerous, the tenant was answerable. These exceptions must be overruled.

An architect whom the tenant had employed to prepare plans for the alterations of the building was asked by the tenant, "Was there anything that you observed about that parapet which led you, in the light of your experience as an architect, to believe that it was unsafe?" Upon objection of the plaintiff this question was excluded, subject to the tenant's exception. The expected answer was that this witness "observed nothing to lead him to believe it was unsafe." The judge might have permitted this question to be answered, but we do not think that its exclusion was error. The architect had already testified at some length as to what he observed with respect to the parapet. He testified that it was for appearances rather than safety that the parapet was being removed and that he saw "no evidence of the wall leaning." His answer to the excluded question would have added little or nothing to his previous testimony.

The other exceptions argued by the tenant reveal no prejudicial error.

3. The owners excepted to the denial of their motion for a directed verdict. We think that this exception should be overruled. The rule in this Commonwealth in a situation of the sort under consideration is this: The owner of premises upon which there is a nuisance or a condition that plainly will lead to one cannot avoid liability to a third person who

is injured thereby outside the premises by showing that prior
to the injury he had let the premises to another.  In such a
case the landlord is deemed by the act of letting to have
contemplated or authorized the continuance or maintenance
of the nuisance.  If, however, the premises are a nuisance
not in themselves, but in consequence of the use made of
them by the tenant, then the question is whether this use
is authorized by the landlord.  "If the premises can be used
by the tenant in the manner intended by the landlord, either
as shown by the construction of the premises, or by the terms
of the lease, or by other evidence, without becoming a nui-
sance, the landlord is not liable for the acts or neglect of the
tenant which creates the nuisance.  If the tenant creates
the nuisance without authority of the landlord, and after
he has entered into occupation as tenant, the landlord is
not liable."  *Lufkin* v. *Zane,* 157 Mass. 117, 122.  *Dalay* v.
*Savage,* 145 Mass. 38, 41.  *Clifford* v. *Atlantic Cotton Mills,*
146 Mass. 47.  *Coman* v. *Alles,* 198 Mass. 99, 102–103.  *Hill*
v. *Hayes,* 199 Mass. 411, 415–416.  *Cerchione* v. *Hunnewell,*
215 Mass. 588, 589.  *Howard* v. *Central Amusement Co.*
224 Mass. 344.  *Nichols* v. *Donahoe,* 309 Mass. 241, 242.
*Brazinskos* v. *A. S. Fawcett, Inc.* 318 Mass. 263, 265–266.
Applying these principles to the evidence, we are of opinion
that the judge did not err in submitting the case against the
owners to the jury.  It could have been found that, at the
time they leased the building to the tenant, the condition
of the parapet was such as to constitute a nuisance and a
source of danger to persons using the sidewalk below (*Howard*
v. *Central Amusement Co.* 224 Mass. 344, 346), and that the
owners knew or ought to have known of that condition.
Their responsibility for that condition did not end when
they leased the property to the tenant.  The jury could
have found that the nuisance and the negligence of the
contractor combined to cause the injury.  See *Burke* v.
*Hodge,* 217 Mass. 182, 184–185.

The owners direct our attention to the fact (which is borne
out by the record) that their motion for directed verdicts
with respect to counts 1 and 2 was specifically based on a

variance between the pleadings and the proof. See *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 385. These counts alleged negligence on the part of the owners in the maintenance of property within their control. There was no evidence that the property was within their control. On the contrary, the evidence, and the stipulations made at the pre-trial of the case, required the finding that the control had passed to the tenant. *Fanciullo* v. *B. G. & S. Theatre Corp.* 297 Mass. 44, 51. The jury, however, found for the plaintiff on all four counts of the declaration. On two of the counts (those based on nuisance) the case was rightly submitted to the jury, as we have indicated above. We fail to see how in these circumstances the owners were harmed by the refusal of the judge to direct verdicts on the counts for negligence. See *Erickson* v. *Buckley,* 230 Mass. 467, 470.

The owners excepted to the refusal of the judge to grant numerous requests for instructions. Requests numbered 1, 2, and 3 in substance asked the judge to charge that the parties had made a binding agreement at the pre-trial to the effect that the owners had leased the building to the tenant and had completely divested themselves of control. This exception must be overruled. The pre-trial report was in evidence and the judge specifically read that portion of it in which it was agreed that the owners had leased the property in question to the tenant and that the lease was in full force and effect at the time of the accident. Having done so, he ought to have gone farther and told the jury that under the lease control passed to the tenant, instead of leaving that question, as he did, to the jury. But we think that the jury could hardly have been in any doubt on the question of control in view of the terms of the lease.[1] Moreover, control was not decisive of the question of liability. As stated above, the owners, if they let the building on which a nuisance existed, would be liable even if they had divested themselves of control.

---

[1] The lease, which was in evidence, stated that it was a demise of the "entire premises."

Questions of more difficulty arise out of the denial of the owners' fourth, fifth, sixth, and seventh requests.[1] Under the lease here it was provided that "The lessee . . . shall be responsible for the condition of the premises leased, and . . . shall have the right to make . . . alterations and improvements in and upon said premises" with an exception not here material. The tenant further agreed to save the owners "harmless from all loss and damage occasioned by . . . any nuisance made or suffered on the premises," and to make no use thereof "which shall be unlawful, improper . . . or offensive . . . or injurious to any person or property." The owners argue that these requests were sufficient to direct the judge's attention (see *Higgins* v. *Pratt*, 316 Mass. 700, 712) to the principle that in view of the covenants contained in the lease the owners cannot be said to have contemplated the continuance of a nuisance on the premises, if there was one. These requests were not only refused but were not given in substance.

Whether a landlord who lets premises on which there is a nuisance can avoid liability to third persons because of covenants contained in the lease which place a duty on the tenant to repair the premises or remedy the nuisance, or to save the landlord harmless from its consequences, is a question on which there are differing opinions. The American Law Institute in its comment under § 379 of its Restatement of Torts (which states the rule that the lessor does not escape liability by leasing property on which a nuisance exists),

---

[1] These are: "4. By virtue of the terms of the lease, the lessee, Modern Die & Machine Co. had covenanted with the lessor to save them harmless for any nuisance on the premises and to be responsible for the condition of the premises leased. 5. By virtue of the terms of the lease, the defendants Jennie Shivek et al, as against members of the public, had the right to rely upon the Modern Die & Machine Co. managing the premises in such a way as to prevent their being a nuisance. . . . 6. If the jury should find that a nuisance existed at the time of the making of the lease in October of 1945, due to the want of repair of the premises, the defendants Jennie Shivek et al are not liable in this action for the use of the premises in such a way as to do harm, merely because there was a manifest possibility of their being used in such a way. The liability will stop with the tenant whose intervening wrong is the immediate cause of the damage. . . . 7. Assuming the jury should find from all the evidence that the condition or state of repair of the wall and parapet was such that at the time of the execution of the lease it probably would fall upon the public sidewalk at some time during the term of the lease, the defendants cannot be said to have contemplated such a happening."

takes the following view: "The fact that the lessee's performance of his duty to demolish, alter or repair the dangerous condition . . . would have made the building safe, does not affect the lessor's liability. And this is so although the lessee has expressly covenanted in the lease to demolish, alter or repair the building. Such a covenant gives the lessor a right to recover from the lessee any damages which he is forced to pay under the rule stated in this Section, but does not affect the lessor's liability to persons injured outside the premises" (comment d). This view is supported by the great weight of authority in this country. *Calder* v. *Smalley,* 66 Iowa, 219, 223. *Mitchell* v. *Brady,* 124 Ky. 411, 416. *Nugent* v. *Boston, Concord & Montreal Railroad,* 80 Maine, 62, 78–79. *Isham* v. *Broderick,* 89 Minn. 397, 400. *Bixby* v. *Thurber,* 80 N. H. 411, 415. *Ingwersen* v. *Rankin,* 18 Vroom, 18, 21. *Swords* v. *Edgar,* 59 N. Y. 28. *Junkermann* v. *Tilyou Realty Co.* 213 N. Y. 404, 409. Prosser on Torts, page 652. 32 Am. Jur., Landlord & Tenant, § 759. In England a contrary rule obtains. *Pretty* v. *Bickmore,* L. R. 8 C. P. 401. *Gwinnell* v. *Eamer,* L. R. 10 C. P. 658.

To ascertain the rule in this Commonwealth it is necessary to review several of the decisions on which the owners rely. In *Dalay* v. *Savage,* 145 Mass. 38, 40, the court, after stating the rule that, by leasing premises on which there is a nuisance, the lessor does not avoid liability to persons injured outside the premises, added the qualification "unless the tenant has agreed with his landlord to put the premises in proper repair." This was dictum.

In *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47 (decided shortly after *Dalay* v. *Savage*), the court per Holmes, J., without deciding the question, observed that "courts have differed when the nuisance existing at the time of the lease was due to want of repairs, and the tenant had covenanted to make repairs" (page 49).

In *Cerchione* v. *Hunnewell,* 215 Mass. 588, the plaintiff was injured by slipping on ice on a sidewalk which had formed by water discharged from a spout on a building

owned by the defendants. The trial judge, subject to the defendants' exceptions, refused to allow them to show that the building was demised for a term of twenty years under a lease by which the lessee took possession of the entire premises in their then condition, with the right to make such alterations and repairs as it might deem expedient or to remove the building and erect a new one, and covenanted to save the lessors harmless from all loss or damage occasioned by any nuisance made or suffered on the premises, and from any claim or damage arising from neglect in not removing snow or ice from the sidewalks bordering on. the premises. The court, after stating the rule that a landlord may be liable where he lets premises on which a nuisance exists, said, "But where there is a transfer of possession to a tenant under a genuine lease, by which he is given the right to make alterations and even to replace the existing structures by new, and agrees to save the lessor harmless from damages arising from any nuisance and especially from unremoved snow and ice, it cannot be said that the landlord contemplates the existence of . . . [the nuisance]. . . . The effect, in shielding a landlord from liability, of an express agreement in a lease, putting a duty upon the tenant to relieve against a nuisance, or the conditions from which a nuisance may be produced . . . is recognized in *Dalay* v. *Savage*, 145 Mass. 38, 42; *Cavanagh* v. *Block*, 192 Mass. 63, 65, 66; *Quinn* v. *Crimmings*, 171 Mass. 255, 256; *Pretty* v. *Bickmore*, L. R. 8 C. P. 401; and *Gwinnell* v. *Eamer*, L. R. 10 C. P. 658" (pages 589–590). A majority of the court was of opinion that the lease ought to have been admitted. It is to be noted that in the *Cerchione* case the court took the view that no nuisance existed on the premises at the time the lease was made. That came about, as the court observed, because of the "wrongful conduct of the tenant in failing to prevent the improper accumulations of ice upon the adjacent sidewalk" (page 590). The court, however, went on to say, "Under the lease offered in evidence it does not appear that the landlord let a nuisance and took rent as compensation for the use of the nuisance.

If he had done this, the landlord might have been liable. But whether the nuisance should exist or not depended solely upon the act or omission of the tenant. In such case the tenant and not the landlord is liable" (page 590).

In *Howard* v. *Central Amusement Co.* 224 Mass. 344, which held a lessor liable who had let property on which there was a nuisance, the court took occasion to point out that the lessor "took no precaution to guard against such danger, or to provide that the tenant should do so" (page 346). That statement, however, was not necessary to the decision because no covenant by the tenant was there involved.

In *Brazinskos* v. *A. S. Fawcett, Inc.* 318 Mass. 263, on facts quite similar to those in *Cerchione* v. *Hunnewell*, effect was given to provisions in a lease whereby the tenant agreed to make repairs and to hold the lessor harmless for injuries to persons or property, and it was held that because of these provisions and the fact that no nuisance existed when the premises were leased it could not be said that the landlord contemplated the existence of the nuisance.

It would thus appear that only in *Cerchione* v. *Hunnewell* and in *Brazinskos* v. *A. S. Fawcett, Inc.* has it actually been held that effect would be given to covenants of the sort here involved. In both of these cases no nuisance was in existence when the premises were let. So far as we have been able to discover no case decided by this court has ever gone to the extent of holding, as the dicta in *Dalay* v. *Savage* and other cases suggest, that a landlord can by such covenants escape liability to a third person stemming from a nuisance where, as here, the nuisance was in existence when the lease was made. Probably in the *Cerchione* and *Brazinskos* cases the landlord could have defended successfully without reliance on the covenants. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47. *Coman* v. *Alles*, 198 Mass. 99. But however that may be, we are not disposed to hold that covenants of the sort here involved can relieve a landlord from liability for nuisance to persons injured outside the premises in a case like the present where the nuisance existed at the time

of the letting. It is one thing to let premises on which there is no nuisance, and quite another to let premises on which a nuisance already exists. Even if the tenant is diligent about performing his covenants in the latter situation, there is bound to be an interval of time (as is illustrated by the present case) during which the nuisance would exist. We think it would be contrary to sound public policy to allow a landlord to avoid liability in such a case merely because his tenant had agreed to protect him against it. The rights of a stranger, who was not a party to the agreement, ought not to be thus affected. For an able and exhaustive statement of the reasons for so holding see opinion of Judge Folger in the leading case of *Swords* v. *Edgar*, 59 N. Y. 28, 36–39.

It follows that the judge did not err in the denial of requests numbered 4, 5, 6, and 7. To discuss the exceptions to the denial of other requests argued by the owners would unduly prolong this opinion to no useful purpose. The denial of these requests reveals no error. Most of them are governed by what has been said above.

*Exceptions overruled.*